HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANA LOPEZ DEMETRIO and FRANCISCO EUGENIO PAZ, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>SAKUMA BROTHERS FARMS, INC.,<br><br>        Defendant. | CLASS ACTION<br><br>NO. 2:13-cv-01918-MJP<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><br>NOTE ON MOTION CALENDAR: JUNE  27, 2014 |

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:13-cv-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION AND RELIEF REQUESTED ...........................................1

II.   STATEMENT OF THE FACTS ..................................................................1

    A.    Relevant Factual and Procedural Background .....................................1

    B.    Plaintiffs' Counsel Thoroughly Investigated the Claims of the
        Proposed Class........................................................................................2

    C.    The Terms of the Proposed Settlement ................................................3

        1.    The Settlement Class ...................................................................3

        2.    The Release as to All Settlement Class Members ......................4

        3.    The Settlement Relief ..................................................................4

            a.    Class Payment ..................................................................5

            b.    Plaintiffs' Enhancement Awards. ...................................6

            c.    Attorneys' Fees and Litigation Expenses. ......................6

            d.    Administration of Settlement ..........................................6

            e.    Payment Schedule ...........................................................6

            f.    Injunctive Relief .............................................................7

        4.    The Security for the Settlement Payments .................................8

        5.    The Notice Program ....................................................................8

        6.    The Unreleased Claim for Declaratory Relief.........................10

        7.    The Anti-Retaliation Provision.................................................10

III.  ARGUMENT AND AUTHORITY ...........................................................10

    A.    Settlement and Class Action Approval Process .................................10

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT  - i
CASE NO. 2:13-CV-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.350.3528
www.tmdwlaw.com

B.   The Criteria for Settlement Approval Are Satisfied ............................................12

   1.   The Settlement Agreement Is the Product of Serious,
      Informed, and Arm's Length Negotiations ............................................12

   2.   The Settlement Agreement Provides Substantial Monetary Relief for
      the Class................................................................................................13

   3.   The Settlement Agreement Is Fair and Reasonable in Light
      of the Alleged Claims and Defenses ......................................................14

   4.   The Class Representative Enhancement Awards Are Reasonable..........16

   5.   The Requested Attorneys' Fees Are Fair and Reasonable .....................17

      a.   Lodestar Analysis Supports Counsel's Fee Request ..................18

      b.   Class Counsel's Out-of-Pocket Expenses Were
          Reasonably Incurred ................................................................20

   6.   The Attorney Fee and Cost Petition and Final Approval Motion
      Will Be Available to Settlement Class Members Before the
      Objection Deadline ................................................................................21

C.   Provisional Certification of the Class Is Appropriate..........................................22

D.   The Proposed Notice Program Is Constitutionally Sound...................................23

IV.   CONCLUSION ...............................................................................................24

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT  - ii
CASE NO. 2:13-CV-01918-MJP

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.350.3528
www.tmdwlaw.com

# TABLE OF AUTHORITIES

Page No.

## FEDERAL CASES

*Clark v. Payless Shoesource, Inc.,*
2012 WL 3064288 (W.D. Wash. July 27, 2012)...................................................19-20

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ..............................................................................10, 12

*De Leon v. Trevino,*
163 F.Supp.2d 682 (S.D. Tex. 2001) ...........................................................................18

*Evans v. Jeff D.,*
475 U.S. 717 (1986) ......................................................................................................17

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ......................................................................................12

*Harris v. Marhoefer,*
24 F.3d 16 (9th Cir.1994) .............................................................................................20

*Hughes v. Microsoft Corp.,*
2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) .......................................................12

*In re Immune Response Sec. Litig.,*
497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......................................................................20

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000) .......................................................................................16

*In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.,*
295 F.R.D. 438 (C.D. Cal. 2014).................................................................................20

*Gooden v. Blanding,*
686 F. Supp. 896 (S.D. Fla. 1988) ..............................................................................18

*Laguna v. Coverall N. Am., Inc.,*
___F.3d ___, No. 12–55479, 2014 WL 2465049 (9th Cir. June 3, 2014)................12, 14

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
244 F.3d 1152 (9th Cir. 2001) .....................................................................................22

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT  - iii
CASE NO. 2:13-CV-01918-MJP

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

*Moreno v. City of Sacramento,*
    534 F.3d 1106 (9th Cir. 2008) ...................................................................19

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ...................................................................................23

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ...............................................................11, 12

*Pelletz v. Weyerhaeuser Co.,*
    255 F.R.D. 537 (W.D. Wash. 2009) .............................................12, 17, 19

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ...................................................................................22

*Radcliffe v. Experian Info. Solutions,*
    715 F.3d 1157 (9th Cir. 2013) ...................................................................16

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ...............................................................15, 16

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir. 1994) .....................................................................23

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ...............................................................17, 18

*Villalobos v. Vasquez-Campbell,*
    1991 WL 311902 (W.D. Tex. Nov. 15, 1991) ..........................................18

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ...................................................................18

## FEDERAL STATUTES

29 U.S.C. § 1821(d)(1) ......................................................................................4

29 U.S.C. § 1821(d)(2) ......................................................................................4

29 U.S.C. § 1822(a) ...........................................................................................4

29 U.S.C. § 1822(c) ...........................................................................................4

29 U.S.C. § 1831(c)(1) .......................................................................................4

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT  - iv
CASE NO. 2:13-CV-01918-MJP

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

29 U.S.C. § 1831(c)(2) ...................................................................................4

29 U.S.C. § 1832(a) ......................................................................................4

29 U.S.C. § 1832(c) ......................................................................................4

**FEDERAL RULES**

Fed. R. Civ. P. 23(a)(1) ..............................................................................22

Fed. R. Civ. P. 23(a)(2) ..............................................................................22

Fed. R. Civ. P. 23(a)(3) ..............................................................................22

Fed. R. Civ. P. 23(a)(4) ..............................................................................22

Fed. R. Civ. P. 23(b)(3) ..............................................................................22

Fed. R. Civ. P. 23(c)(2) ..............................................................................22

**STATE STATUTES AND REGULATIONS**

Revised Code of Washington 49.46.070 ......................................................4

Revised Code of Washington 49.46.090 ...........................................4, 6, 17

Revised Code of Washington 49.48.030 ................................................6, 17

Revised Code of Washington 49.52.050 ................................................4, 15

Revised Code of Washington 49.52.070 .........................................6, 15, 17

Revised Code of Washington 63.29 .............................................................5

Washington Administrative Code 296-128-010 ...........................................4

Washington Administrative Code 296-131-020 .....................................4, 10

Washington Administrative Code 296-131-015 ...........................................4

Washington Administrative Code 296-131-017 ...........................................4

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

**OTHER AUTHORITIES**

4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions (4th ed. 2002)....10, 11, 12, 22

Manual for Complex Litigation (Fourth) (2012)............................................................11, 16, 22

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT  - vi
CASE NO. 2:13-CV-01918-MJP

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

## I.  INTRODUCTION AND RELIEF REQUESTED

2      Plaintiffs respectfully move for preliminary approval of the class action settlement

3  agreement ("Settlement") reached between Plaintiffs Ana Lopez Demetrio and Francisco

4  Eugenio Paz and Defendant Sakuma Brothers Farms, Inc.  The Settlement provides for

5  payment of $850,000 and substantial injunctive relief for the class.  To Plaintiffs' knowledge, it

6  is the largest farmworker wage and hour class action settlement on record in Washington.  The

7  Settlement is fair and reasonable and serves the best interests of the Class Members.

8  Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the

9  Settlement; (2) provisionally certify the proposed settlement class; (3) appoint Terrell Marshall

10  Daudt & Willie PLLC ("TMDW") and Columbia Legal Services ("CLS") as class counsel; (4)

11  appoint Ana Lopez Demetrio and Francisco Eugenio Paz as class representatives; (5) approve

12  the proposed notice plan; (6) appoint TMDW and CLS to serve as settlement administrators;

13  and (7) schedule the final fairness hearing and related dates proposed by the parties.

14

## II.  STATEMENT OF THE FACTS

15  **A.      Relevant Factual and Procedural Background**

16      Defendant Sakuma Brothers Farms, Inc. ("Sakuma") has had farm operations in the

17  Pacific Northwest for almost a century.  Sakuma and its related companies market themselves

18  as world leaders in berry research and development, with a large nursery operation in

19  California, a large fruit production and processing operation in Skagit County, and a complex

20  picking operation in Skagit County.  Sakuma hires immigrant workers to work in the fruit

21  harvest at fields in Skagit County and pays these workers on a piece-rate basis for the amount

22  of fruit they pick.[1]  Sakuma has a direct-to-market operation and a commercial operation for

23  processed fruit.  The pickers in Skagit County pick all the fruit that supplies both operations.

24      In this lawsuit, Plaintiffs alleged that Sakuma has engaged in a systematic course of

25  unlawful conduct with respect to migrant and seasonal employees who perform piece-rate fruit

26

---

[1] Sakuma employed 577 piece-rate pickers in 2013, 557 piece-rate pickers in 2012, 399 piece-rate pickers in 2011, and 213 piece-rate pickers during the class period portion of the harvest in 2010.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 1
CASE NO. 2:13-cv-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  harvest work for the company.  Plaintiffs allege the violations have taken five primary forms:

2  (1) Sakuma knowingly failed to pay for all hours worked before and after picking fruit; (2)

3  Sakuma knowingly failed to pay the Washington minimum wage; (3) Sakuma knowingly failed

4  to provide rest periods on the employer's time; (4) Sakuma knowingly failed to provide and

5  keep accurate statements of hours worked; and (5) Sakuma knowingly failed to comply with an

6  agreed-upon working arrangement during the 2013 blueberry harvest.  Plaintiffs allege

7  Sakuma's conduct violated Washington wage and hour laws and the Migrant and Seasonal

8  Agricultural Worker Protection Act ("AWPA").

9          On October 24, 2013, Raul Merino Paz filed the class action complaint on behalf of

10  migrant and seasonal piece-rate employees who worked for Sakuma in Washington.  Dkt. No.

11  1.  Sakuma answered and asserted several defenses.  Dkt. No. 11.  The complaint was amended

12  twice to reflect the addition of Ana Lopez Demetrio and Francisco Eugenio Paz as Plaintiff

13  class representatives and to reflect the voluntary dismissal without prejudice of Raul Merino

14  Paz.  Dkt. Nos. 12, 19.  Plaintiffs filed the Second Amended Complaint on January 9, 2014,

15  Dkt. No. 19, and Defendant filed its answer on February 18, 2014.  Dkt. No. 20.

16          The parties began discussing settlement in early March 2014.  Declaration of Marc C.

17  Cote ("Cote Decl.") ¶ 2.  On April 15, 2014, the parties participated in mediation with Teresa

18  Wakeen.  *Id*.  This in-depth mediation lasted over fifteen hours, and the parties reached

19  agreement on the major terms of a settlement, including Sakuma's payment of $850,000 and

20  agreement to injunctive relief, after midnight on April 16, 2014.  *Id*.  The parties negotiated the

21  remaining details of the settlement and language of the final agreement and notice and claim

22  forms during the next several weeks.  *Id*.  At all times, the negotiations were adversarial, non-

23  collusive, and at arm's-length.  *Id*.  An executed copy of the Stipulation of Settlement and

24  Release ("Settlement Agreement"), including the proposed notice and claim forms, security

25  agreement, promissory note, and confession of judgment, has been filed with the Court.

26  **B.      Plaintiffs' Counsel Thoroughly Investigated the Claims of the Proposed
          Class**

          Plaintiffs' counsel have extensive experience advocating for immigrant workers and

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 2
CASE NO. 2:13-cv-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   investigating, litigating, certifying, trying, and settling class action cases like this one.  *See* Cote

2   Decl. ¶¶ 7–11; Declaration of Daniel G. Ford ("Ford Decl.") ¶¶ 4-5.  Before filing this action,

3   Plaintiffs' counsel spent three months investigating the factual bases of the workers' claims,

4   interviewing workers, analyzing pay statements and other documents, researching legal issues,

5   and preparing the initial complaint.  Cote Decl. ¶ 4.  This investigation included multiple

6   meetings with dozens of workers.  *Id.* ¶ 5; Ford Decl., ¶ 10.

7        After the complaint was filed, Plaintiffs continued to investigate the facts and law.  The

8   parties conducted extensive discovery over several months, including the production of

9   thousands of pages of documents and data, the depositions of both Plaintiffs and three Sakuma

10  representatives, and an on-site inspection of Sakuma's property.  *See* Cote Decl. ¶¶ 4 – 5.

11  Plaintiffs pursued lengthy discovery calls to obtain broad discovery, which resulted in the

12  production of many additional documents and data that had not previously been produced.  *Id.*

13  ¶ 4.  In addition, Plaintiffs' counsel spent a considerable amount of time interviewing Class

14  Members and potential witnesses—most in Spanish or with the assistance of Triqui and

15  Mixteco interpreters.  *Id.* ¶ 5; Ford Decl. ¶¶ 9 – 10.  Plaintiffs' counsel estimate they have

16  interviewed more than 200 individuals who worked for Sakuma.  Cote Decl. ¶ 5; Ford Decl. ¶

17  10.  These interviews proved very helpful in allowing counsel to assess the strengths and

18  weaknesses of Plaintiffs' claims and preparing the case for mediation.  Cote Decl. ¶ 5.

19  **C.      The Terms of the Proposed Settlement**

20       The terms of the parties' proposed Settlement are contained in the Settlement

21  Agreement filed with the Court.  For this request for preliminary approval, the following

22  summarizes the Settlement Agreement's salient terms:

23       1.      The Settlement Class

24       For purposes of settlement, the parties have stipulated to class certification.  The

25  proposed settlement class will include about 1,221 current and former employees of Sakuma

26  who worked as migrant and seasonal piece-rate fruit pickers in Washington at any time from

    October 13, 2010 to December 31, 2013 (the "Class Members").  Settlement Agreement ¶ 7.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 3
CASE NO. 2:13-CV-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   "Settlement Class Members" will include Class Members who do not timely exclude

2   themselves from the Settlement following the process in the Settlement Agreement.  *Id*.

3         2.    <u>The Release as to All Settlement Class Members</u>

4        Under the Settlement Agreement, upon final approval by the Court, Plaintiffs,

5   individually and on behalf of the Settlement Class Members, will release Sakuma Brothers

6   Farms, Inc. from any and all claims for alleged wage and hour violations that were asserted in

7   this action, including claims under WAC 296-131-020, RCW 49.46.090, RCW 49.46.070,

8   WAC 296-131-015, WAC 296-131-017, WAC 296-128-010, RCW 49.52.050, 29 U.S.C. §

9   1822(a), 29 U.S.C. § 1832(a), 29 U.S.C. § 1821(d)(2), 29 U.S.C. § 1831(c)(2), 29 U.S.C. §

10  1821(d)(1), 29 U.S.C. § 1831(c)(1), 29 U.S.C. § 1822(c), and 29 U.S.C. § 1832(c), that arose

11  between October 23, 2010 and December 31, 2013.  This release does not include (1) Plaintiffs

12  and Class Members' claims for declaratory relief on the issue of whether Sakuma must pay for

13  the time piece rate workers spend in rest breaks under WAC 296-131-020(2) and the Minimum

14  Wage Act on a going-forward basis ("Unreleased Claim for Declaratory Relief"); (2) any claim

15  arising out of the security agreement (which provides Plaintiffs and the Settlement Class a

16  security interest in Sakuma's crops), the promissory note, and the confession of judgment

17  Sakuma provided as security for its payment obligations; and (3) any claim for retaliation for

18  participating in this class action lawsuit or benefitting from the agreed injunctive relief.

19        3.    <u>The Settlement Relief</u>

20       Pursuant to the terms of the Settlement Agreement, Sakuma will pay a total of $850,000.

21  Settlement Agreement ¶ 13.  The parties have agreed this amount will be divided as follows, as

22  approved by the Court: (1) $500,000 to the Qualified Claimant Class Members (the "Class

23  Payment"); (2) $3,000 each for named Plaintiffs Ana Lopez Demetrio and Francisco Eugenio

24  Paz for their service in this action; and (3) $344,000 to Class Counsel for attorneys' fees and

25  costs pursuant to Washington fee-shifting statutes and for notice and claims administration

26  costs.  *Id*.  Sakuma has also agreed to substantial injunctive relief that ensures employees are

paid for all work performed, that employees receive rest breaks as required by law, and that

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 4
CASE NO. 2:13-cv-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

employees receive pay statements with accurate statements of hours worked.  *See id.* ¶ 15.

After distribution of the settlement payments, a *cy pres* fund will be created for non-wage funds that have been disbursed but remain unclaimed after a period of 120 days. Settlement Agreement ¶ 18(c)(2).  Any *cy pres* funds will be disbursed to the Northwest Justice Project ("NJP").  *Id.*  Plaintiffs' counsel will request that any such funds be earmarked by NJP for assistance to agricultural workers.  NJP provides civil legal assistance and representation to low-income people in cases affecting basic human needs, including a focus on "employment issues primarily for agricultural workers related to lost wages."  http://nwjustice.org/summary-priorities.  If any Qualified Claimants fail to cash wage award checks within one year of distribution, Sakuma will report and deliver such funds to the state Department of Revenue pursuant to RCW 63.29. Settlement Agreement ¶ 18(c)(2). No funds from the Settlement will revert back to Sakuma.  *Id.*

a.  *Class Payment*.  The $500,000 Class Payment will be distributed proportionately to Qualified Claimants.  Settlement Agreement ¶ 18.  Each Settlement Class Member who returns a valid and timely Claim Form will be a "Qualified Claimant."  *Id.*  The determination of each Qualified Claimant's proportionate share of the Class Payment will be based on the following formula: (a) the Class Payment will be divided by the total number of days worked during the Claims Period by all Qualified Claimants, resulting in a gross daily payout amount, and then (b) the gross daily payout amount will be multiplied by each individual Qualified Claimant's total days worked during the Claims Period.  *Id.*

Assuming the Court grants the requested attorneys' fees and costs, Plaintiffs estimate that each Qualified Claimant will receive a minimum of approximately $5.15 for every day he or she worked for Sakuma during the Claims Period.[2]  *See* Cote Decl.  ¶ 6.  For example, because Plaintiff Lopez worked 293 days during the Claims Period, her estimated minimum recovery from the Settlement (assuming a one hundred percent claims rate) is $1,508.95.  *Id.*

---

[2] This amount is equivalent to approximately 34 to 37 minutes of unpaid time a day (based on the annual minimum wage), or payment for two missed rest breaks and 14 to 17 minutes of additional unpaid time per day. *See* Cote Decl.  ¶ 6.  These amounts are near the top end of Plaintiffs' projections on the total unpaid time each day.  *Id.*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 5
CASE NO. 2:13-CV-01918-MJP

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Plaintiff Eugenio Paz worked 162 days during the Claims Period, so his estimated minimum recovery from the Settlement is $834.30.  *Id.*  As it is probable that not all Settlement Class Members will submit claim forms, the actual settlement payments will likely be much higher.

b.    *Plaintiffs' Enhancement Awards*.  If approved by the Court, Plaintiffs Ana Lopez Demetrio and Francisco Eugenio Paz will each receive a stipend of $3,000.  Settlement Agreement ¶ 13(b).  These awards will compensate Plaintiffs for their time and effort for serving as class representatives and for the risks they undertook in prosecuting the case.

c.    *Attorneys' Fees and Litigation Expenses*.  The Settlement Agreement provides that Plaintiffs' counsel, as designated Class Counsel, will receive an award of attorneys' fees and costs (including notice and claims administration costs) in the amount of $344,000, subject to court approval.  *Id.* ¶ 13(c).  Statutory attorneys' fees and costs are appropriate pursuant to the Washington fee-shifting statutes applicable to Plaintiffs' claims, RCW 49.48.030, RCW 49.52.070, and RCW 49.46.090.  The attorneys' fees and costs payment will compensate and reimburse Plaintiffs' counsel for (1) the work already performed by Class Counsel in this case and all of the work remaining to be performed by Class Counsel in documenting the settlement, securing Court approval of the settlement, and making sure that the settlement is fairly administered and implemented, and (2) all costs actually incurred and reasonably anticipated to be incurred by Class Counsel in litigating this Action and finalizing this Settlement, including the costs associated with providing notice of the settlement and claims administration.  The fee and cost payment includes $9,141.95 for litigation expenses incurred in this case thus far.  *See* Cote Decl. ¶ 16; Ford Decl. ¶ 17.

d.    *Administration of Settlement*.  The parties have agreed that TMDW and CLS will administer the settlement.  Settlement Agreement ¶ 18.  As settlement administrators, Class Counsel will issue notice, administer the claims process, hold meetings with Settlement Class Members in Skagit County or Bellingham to inform them of their rights under the Settlement, and process payments to Qualified Claimants.  Cote Decl. ¶ 17; Ford Decl., ¶ 17.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 6
CASE NO. 2:13-cv-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.350.3528
www.tmdwlaw.com

1     e.     *Payment Schedule*.  Sakuma will pay the total settlement payment of

2  $850,000 in five installments of $170,000, with payments on the following dates: November

3  15, 2014, February 15, 2015, April 15, 2015, October 15, 2015, and December 15, 2015.

4  Settlement Agreement ¶ 13(d).  Two distributions to Qualified Claimants will occur: one after

5  Sakuma's third installment payment and one after the final installment payment.  *Id.* ¶ 18(c).

6     f.     *Injunctive Relief*.  Sakuma agreed to provide substantial injunctive relief

7  to Plaintiffs and the Settlement Class, including the following (Settlement Agreement ¶ 13(d)):

8     1.     Sakuma must accurately track and record all hours worked by

9  migrant and seasonal employees who perform piece-rate fruit harvest work for Sakuma ("piece-

10  rate pickers").  To do so, Sakuma must (1) ensure all piece-rate pickers are clocked in within

11  five minutes of arriving at the worksite ready to work; and (2) ensure all piece-rate pickers are

12  clocked in before they must stand in line to wash their hands.

13     2.     Sakuma must comply with Washington law regarding rounding

14  practices, and if using a rounding system, will round time entries based on the "7-minute rule"

15  (as reflected in Washington Department of Labor & Industries Administrative Policy ES.D.2).

16     3.     Sakuma must affirmatively provide and ensure that all piece-rate

17  pickers take a 10-minute rest break for every four hours of work.

18     4.     For each pay period, Sakuma must issue to all piece-rate pickers

19  pay statements that show the accurate amount of time worked each day.  If using rounding,

20  Sakuma must round time entries based on the "7-minute rule," as reflected in Washington

21  Department of Labor & Industries Administrative Policy ES.D.2.  Sakuma's pay statements

22  must include separate sections showing (1) the hours worked and (2) the amount paid for piece-

23  rate picking.  Sakuma's pay statements must accurately state the piece rates, hourly rates (if any

24  payment is made on an hourly basis), and number of pounds or pieces picked each day.

25     5.     Sakuma must not make time deductions for meal breaks that

26  Sakuma knows have not been received or taken.  Sakuma must affirmatively provide 30-minute

meal breaks and ensure piece-rate pickers are able to leave the berry fields for meal breaks.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 7
CASE NO. 2:13-cv-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.350.3528
www.tmdwlaw.com

1    Sakuma must ensure, for every harvest, that there is a regularly scheduled time during shifts

2    lasting five hours or longer when piece-rate pickers may leave the fields to take meal breaks.

3    Sakuma must also ensure that there is adequate space for the workers to eat their meals.

4                          6.     Sakuma must pay piece-rate pickers for any and all missed meal

5    breaks that the piece-rate picker reports to Sakuma.

6                          7.     Each day, upon request of any piece-rate picker, Sakuma must

7    provide written documentation that shows the picker's clock-in time, clock-out time, scan-in

8    time for each fruit weigh-in, and the amount of pounds or "pieces" picked for each weigh-in.

9              4.     The Security for the Settlement Payments

10   As a material term of the Settlement Agreement, Sakuma agreed to provide sufficient

11   security to guarantee performance of its settlement payment obligations.  Sakuma provided a

12   signed Promissory Note in which Sakuma promised to make the settlement payments in the

13   timeline described above.  *See* Settlement Agreement ¶ 14(a), Ex. A.  As security for the

14   Promissory Note and payments Sakuma must make under the Settlement Agreement, Sakuma

15   also granted a security interest in its 2014 and 2015 crops.  *See id.*, Ex. B.  Sakuma also

16   executed a Confession of Judgment in favor of Plaintiffs and the Settlement Class and against

17   Sakuma, which will allow Judgment to be entered in the event of and in the amount of any

18   default by Sakuma in the Installment Payments, plus interest at 12% per year and reasonable

19   attorneys' fees and costs incurred to enforce such judgment.  *See id.* ¶ 14(b), Ex. C.

20             5.     The Notice Program

21   In conjunction with preliminary approval, Plaintiffs respectfully ask the Court to

22   approve a notice program in which the settlement administrators will issue to Settlement Class

23   Members (by first class mail) Spanish and English language notice, claim and exclusion forms

24   that inform the workers of the Settlement Agreement and their rights under it.  *See* Settlement

25   Agreement ¶ 18(b), Ex. D (English version of "Notice Packet" containing the notice, claim

26   form, and exclusion form).  Many of the Settlement Class Members are indigenous Mexican

nationals who speak limited Spanish and have limited reading skills.  Ford Decl. ¶¶ 8-9.  Their

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 8
CASE NO. 2:13-CV-01918-MJP

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  native languages have no written form.  *Id.* ¶ 9.  Thus, the Notice of Class Action Settlement

2  will inform recipients that they may call a phone line for an oral translation of the notice in any

3  of three indigenous languages (Triqui de San Martin Intuyoso, Mixtico Alto and Mixteco

4  Bajo).[3]  Settlement Agreement, Ex. D.  Due to the fact that Settlement Class Members are

5  migrant farmworkers who may not have permanent addresses, the notice plan will begin after

6  workers are expected to arrive in Skagit Valley to work in the summer of 2014.  *See id.* ¶ 18(b).

7         On **July 1, 2014**, Sakuma will provide Class Counsel an updated class list with contact

8  information that includes 2014 Sakuma labor camp addresses for potential Settlement Class

9  Members and any other updated addresses for Settlement Class Members.  *Id.*  Within 15 days

10  of receiving the list, Class Counsel will mail a Notice Packet to the Settlement Class Members'

11  updated addresses, as identified in the updated class contact list.  *Id.*, Ex. D.  Settlement Class

12  Members will have until **October 14, 2014** (or 90 days from the initial mailing date, whichever

13  is later) to submit Claim Forms or Exclusion Forms by mail, fax, or in person to Class Counsel,

14  or to object to the settlement.  *Id.* ¶ 18(b), (d), (e), Ex. D.

15         Class Counsel's motion for final approval of the settlement, including approval of the

16  payment of attorneys' fees and litigation expenses and incentive awards for Plaintiffs, will be

17  available for Settlement Class Members to review by contacting Class Counsel at the address or

18  telephone numbers listed on the Class Notice.  *Id.*, Ex. D at 3.  If any Settlement Class Member

19  contacts Class Counsel and requests a copy of the motion for final approval, Class Counsel will

20  send a copy by mail at the address provided.  *Id.*  Class Counsel intend to file the final approval

21  motion and make it available to any Settlement Class Member who requests it by September

22  23, 2014 (three weeks before the objection deadline).  Cote Decl., ¶ 24.

23         Class Counsel will also provide a Notice Packet to any Settlement Class Member who

24  requests one.  Settlement Agreement ¶ 18(b).  To ensure the maximum number of Settlement

25  Class Members have the opportunity to submit claims, Class Counsel will also coordinate with

26

---

[3] Plaintiffs learned through worker interviews that these are the three indigenous languages commonly spoken by Sakuma piece-rate berry harvest workers.  *See* Ford Decl. ¶ 9.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 9
CASE NO. 2:13-CV-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    community organizations in Skagit Valley and/or Bellingham to perform outreach with

2    Settlement Class Members and distribute Class Notice, Claim and Exclusion Forms.  *Id.*  Class

3    Counsel will also arrange a meeting or meetings with Settlement Class Members during the

4    2014 harvest to explain the settlement and provide and collect Claim Forms.  *Id.*

5               6.      The Unreleased Claim for Declaratory Relief

6           The Settlement Agreement provides for a release for alleged violations occurring

7    through December 31, 2013.  Settlement Agreement ¶ 19.  The agreement does not resolve, and

8    Plaintiffs and class members do not release, claims for declaratory relief on the issue of

9    whether Sakuma must provide pay for the time piece-rate workers spend in rest breaks under

10   WAC 296-131-020(2) and the Minimum Wage Act on a going-forward basis.  *Id.* at ¶¶ 19- 20.

11   Plaintiffs intend to present this issue to the Court for resolution, or propose to this Court that

12   the issue be presented to the Washington Supreme Court as a certified question of law.  *Id.*

13              7.      The Anti-Retaliation Provision

14          Sakuma has agreed it will not retaliate against any Settlement Class Member for

15   participating in this lawsuit or benefiting from the agreed monetary or injunctive relief.

16   Settlement Agreement ¶ 16.  The Class Notice reiterates that Sakuma will not retaliate against

17   any worker who submits a claim form."  *Id.*, Ex. D at 6.

18                        **III.  ARGUMENT AND AUTHORITY**

19   **A.      Settlement and Class Action Approval Process**

20          As a matter of "express public policy," federal courts strongly favor and encourage

21   settlements, particularly in class actions and other complex matters, where the inherent costs,

22   delays, and risks of continued litigation might otherwise overwhelm any potential benefit the

23   class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

24   1992); *see also* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") §

25   11.41 (4th ed. 2002) (citing cases).  Here, the proposed Settlement is the best vehicle for Class

26   Members to receive the relief to which they may be entitled in a prompt and efficient manner.

            The Manual for Complex Litigation describes a three-step procedure for approval of

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 10
CASE NO. 2:13-cv-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination

2  of notice of the settlement to all affected class members; and (3) a "fairness hearing" or final

3  approval hearing, at which class members may be heard regarding the settlement, and at which

4  evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement

5  may be presented. *Manual for Complex Litigation (Fourth)* ("*MCL 4th*") §§ 21.632-.634

6  (2012). This procedure, which is used by courts in this Circuit and endorsed by class action

7  commentator Professor Newberg, safeguards class members' due process rights and enables the

8  court to fulfill its role as the guardian of class interests. *See Newberg* § 11.25.

9       With this motion, the parties request the Court take the first step in the settlement

10  approval process by granting preliminary approval of the proposed Settlement Agreement. The

11  purpose of preliminary evaluation of a proposed class action settlement is to determine whether

12  the settlement is within the "range of possible approval," and thus whether notice to the class of

13  the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *See id.*

14  The decision to approve or reject a proposed settlement is committed to the Court's sound

15  discretion. *See City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate

16  court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to

17  the agreement," and will reverse only upon strong showing of abuse of discretion (quoting

18  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)).

19       The Court's preliminary approval will allow Settlement Class Members to receive

20  notice of the proposed Settlement Agreement's terms and the date and time of the final

21  approval hearing, at which Settlement Class Members may be heard regarding the Settlement

22  Agreement, and at which time further evidence and argument concerning the fairness,

23  adequacy, and reasonableness of the Settlement Agreement may be presented. *See MCL 4th* §§

24  13.14, 21.632-.634. Neither notice nor a hearing is required at the preliminary approval stage;

25  the Court may grant such relief upon an informal application by the settling parties, or even on

26  the basis of information already known, at the Court's discretion. *See id.* at §§ 13.14, 21.632.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 11
CASE NO. 2:13-cv-01918-MJP

**B.      The Criteria for Settlement Approval Are Satisfied**

While the threshold for preliminary approval requires only that the settlement fall within the "range of possible approval," a preliminary analysis of the final approval criteria shows that Plaintiffs exceed that showing.  *See Newberg* at § 11.25.  At the final approval stage, a proposed settlement may be approved if it is determined to be "fundamentally fair, adequate, and reasonable." *Laguna v. Coverall N. Am., Inc.*, ___F.3d ___, No. 12–55479, 2014 WL 2465049, at *2 (9th Cir. June 3, 2014) (quoting *Officers for Justice*, 688 F.2d at 625).  Here, the proposed Settlement is the product of serious and informed arm's-length negotiations and falls well within a range of reasonableness sufficient to warrant its preliminary approval.

1.      The Settlement Agreement Is the Product of Serious, Informed, and Arm's-Length Negotiations

The Court's role is to ensure "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotations and citations omitted).  "A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001); *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 542-43 (W.D. Wash. 2009) (approving settlement "reached after good faith, arms-length negotiations").

The Settlement Agreement in this case is the result of intensive, arm's-length negotiations between experienced attorneys for both parties who are highly familiar with class action litigation in general and with the legal and factual issues of this farmworker case in particular. *See* Cote Decl. ¶¶2 – 4, 7; Ford Decl., ¶¶10–13.  Plaintiffs' counsel are particularly experienced in the litigation, certification, trial, and settlement of wage and hour cases similar to this case.  *See id.*  The Settlement Agreement was the result of several months of intensive discovery and settlement discussions, including a fifteen-hour mediation with respected mediator, Teresa Wakeen.  *Id.*  Moreover, as discussed in Section II.B above, counsel spent a considerable amount of time engaging in discovery, reviewing documents, interviewing

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 12
CASE NO. 2:13-CV-01918-MJP

1   witnesses, and analyzing legal issues.  *See Hanlon*, 150 F.3d at 1027 (no basis to disturb the

2   settlement, in the absence of any evidence suggesting that the settlement was negotiated in

3   haste or in the absence of information).  Plaintiffs and their counsel support the settlement as

4   fair, reasonable, adequate and in the best interests of the class.  Cote Decl. ¶ 7; Ford Decl. ¶ 13.

   2.   The Settlement Agreement Provides Substantial Monetary Relief for the
        Class

       The Settlement Agreement provides relief for all Settlement Class Members who return

   a valid and timely Claim Form.  The agreement requires Sakuma to pay $850,000 to fund the

   Settlement.  These funds will cover payments to Qualified Claimants, notice and administration

   costs, reasonable attorneys' fees and costs, and enhancement awards, as approved by the Court.

       The $500,000 Class Payment that will be distributed to Qualified Claimants will be

   allocated in a manner that is fair and reasonable.  Each Qualified Claimant's share will be

   based on the number of days the individual worked for Sakuma during the Claims Period.  *Id*. ¶

   18(a).  Assuming one hundred percent of Settlement Class Members submit valid and timely

   claim forms, each Settlement Class Member will receive approximately $5.15 per day worked

   during the class period.  Cote Decl. ¶ 6.  Based on data provided by Sakuma, if one hundred

   percent of Settlement Class Members submit valid claims, the longest working Settlement

   Class Member will receive $2,688.30.  *Id.* ¶ 6.  Even if all Settlement Class Members submit

   valid claims, well over three hundred workers will receive payments of more than $500 each,

   and more than seventy workers will receive payments of more than $1,000 each.  *Id.*  If fewer

   individuals submit valid claims, the recovery figures for each individual will be higher.  *Id.*

       The manner in which the settlement funds will be allocated is simple and efficient.

   Settlement Class Members who do not opt out and who submit a valid and timely Claim Form

   will receive payments for the share of the Class Payment to which they are entitled based upon

   their length of employment at Sakuma during the Claims Period.  Settlement Agreement ¶

   18(a).  The Settlement amount is non-reversionary and the entire Class Payment will go to

   Qualified Claimants, except for unclaimed funds, which will go to NJP or the state.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 13
CASE NO. 2:13-cv-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

2       3.      The Settlement Agreement Is Fair and Reasonable in Light of the Alleged
                Claims and Defenses
3

4           Entering into mediation, Plaintiffs and their counsel were confident in the strength of

5   their case, but also pragmatic in their awareness of the risks inherent to litigation and the

6   various defenses available to Sakuma.  The reality is that Class Members could have ended up

7   recovering only a fraction of the Settlement Agreement benefits, facing a bankrupt defendant

8   due to mounting legal costs, or losing the case at or before trial. These facts were significant

9   enough to convince Plaintiffs and their counsel that the benefits of the Settlement Agreement

10  reached with Sakuma outweigh the gamble of continued litigation.

11          Sakuma steadfastly denied that it failed to pay migrant and seasonal workers for all

12  hours worked, failed to record all hours worked, and failed to provide rest breaks.  Sakuma also

13  forcefully argued that even if Plaintiffs were successful in proving their claims, any damages

14  award would be minimal.  If Sakuma was able to convince a jury that Plaintiffs' allegations

15  were overstated or unfounded, Sakuma could effectively reduce the recoverable damages or

16  eliminate them altogether.  There is also a substantial risk of losing inherent in any jury trial,

17  particularly one involving immigrant farmworkers who do not speak or understand English.

18  *See Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 672, 230 P.3d 583 (2010) ("Issues involving

19  immigration can inspire passionate responses that carry a significant danger of interfering with

20  the fact finder's duty to engage in reasoned deliberation.").  Even if Plaintiffs did prevail, any

21  recovery could be delayed for years by an appeal or the potential bankruptcy of Sakuma.

22          Another risk Plaintiffs faced going forward is that this Court would decline to certify

23  this case as a class action.  Sakuma has strenuously denied that class certification is appropriate

24  in this case.  If Sakuma was able to present convincing facts to support its position, the Court

25  could have refused to certify the class, leaving only the named Plaintiffs to pursue their claims.

26          Finally, Sakuma's financial situation presented a significant risk that Plaintiffs would be

unable to collect all or a significant portion of any judgment entered against Sakuma.  *See*

---

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 14
CASE NO. 2:13-cv-01918-MJP

1    *Laguna*, 2014 WL 2465049, at *3 (citing the defendant's poor financial health and the

2    increased "chance that Plaintiffs would be left with nothing if they continued to litigate their

3    claims" in affirming district court's approval of class action settlement).  Indeed, Plaintiffs'

4    analysis of available financial information revealed that Sakuma's ability to pay a judgment

5    beyond the amount recovered in this settlement is highly uncertain.  Sakuma indicated that due

6    to financial issues, it could not satisfy a large class-wide judgment or the continuing accrual of

7    attorneys' fees.  Cote Decl. ¶ 21.  And due to its inability to make a lump sum settlement

8    payment, Sakuma had to agree to installment payments over a one-year period.  *See* Settlement

9    Agreement ¶ 13(d).   In addition, insurance coverage was not available to satisfy Plaintiffs'

10   claims.  Cote Decl. ¶ 21.

11          In light of these hurdles, it is unlikely that Plaintiffs and Settlement Class Members

12   could recover the maximum potential damages for their claims after a trial.  In preparation for

13   mediation, Class Counsel spent considerable time analyzing the data provided by Sakuma and

14   performing potential damages calculations to determine the amount Plaintiffs and Settlement

15   Class Members could recover if they went to trial.  Cote Decl. ¶ 22.  Damages calculations

16   show, for example, that if Plaintiffs successfully proved Sakuma's liability for (1) a failure to

17   provide 50% of the required rest breaks for every worker, (2) a failure to pay for ten minutes of

18   pre-shift and post-shift work each day for every worker, and (3) the maximum statutory

19   damages available under AWPA, the class could have potentially recovered $764,131.85.  *Id.* ¶

20   22.  When prejudgment interest for the Washington wage claims is added to this, the total

21   amount potentially recoverable by the Class would be approximately $808,695.77.  *Id.*  If

22   Plaintiffs proved that Sakuma's alleged wage violations were done "wilfully and with intent to

23   deprive the employee[s] [of their] wages," the Class could recover an additional $264,131.85 in

24   exemplary damages.  *See id.*; RCW 49.52.050; RCW 49.52.070.  Thus, assuming success on all

25   claims and proof of the damages outlined above, the possible recovery for the class is either

26   $808,695.77 or $1,072,827.62.  Cote Decl. ¶ 22.

        Assuming every single Settlement Class Member submits a valid claim, the Stipulation

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 15
CASE NO. 2:13-cv-01918-MJP

1   of Settlement immediately provides the right to an award that is between 47 and 62 percent of

2   the possible recovery outlined above (and this percentage will be higher if less than all

3   Settlement Class Members submit claims).  These percentages are well in line with settlements

4   approved by other courts.  *See, e.g., Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir.

5   2009) (approving settlement amounting to 30 percent of damages estimated by the class expert;

6   court noted that even if the plaintiffs were entitled to treble damages that settlement would be

7   approximately 10 percent of the estimated damages); *In re Mego Fin. Corp. Sec. Litig.,* 213

8   F.3d 454, 459 (9th Cir. 2000) (approving a settlement estimated to be worth between 1/6 to 1/2

9   the plaintiffs' estimated loss); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D.

10  Cal. 2008) (approving settlement amounting to 9 percent of estimated total damages).

11          The Settlement also provides injunctive relief to Settlement Class Members to ensure

12  their rights and the rights of future migrant and seasonal Sakuma employees are protected.  It

13  also provides retaliation protections and allows Plaintiffs and the class to seek declaratory relief

14  on whether Sakuma must pay for time piece-rate workers spend in rest breaks.

15          4.      The Class Representative Enhancement Awards Are Reasonable

16          Stipends for class representatives, like the $3,000 stipends requested here, are

17  appropriate.  Unlike unnamed class members, who enjoy the benefits of the representatives'

18  efforts without taking any personal action, Plaintiffs Lopez and Eugenio worked closely with

19  Class Counsel to provide helpful information, exposed themselves to Sakuma's investigation,

20  answered discovery requests, sat for depositions, and committed themselves to all the rigors of

21  litigation.  Cote Decl. ¶ 20; Ford Decl. ¶ 18.  Small incentive awards, which serve as premiums

22  in addition to any claims-based recovery from the settlement, promote the public policy of

23  encouraging individuals to undertake the responsibility of representative lawsuits.  *See*

24  *Rodriguez*, 563 F.3d at 958–59; *see also* MCL 4th § 21.62 n. 971 (incentive awards may be

25  "merited for time spent meeting with class members, monitoring cases, or responding to

26  discovery").  Incentive awards are generally approved so long as the awards are reasonable and

do not undermine the adequacy of the class representatives.  *See Radcliffe v. Experian Info.*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 16
CASE NO. 2:13-cv-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  *Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) (finding incentive award must not "corrupt the

2  settlement by undermining the adequacy of the class representatives and class counsel").

3       Here, Plaintiffs request service awards of $3,000 each.  Plaintiffs' support of the

4  Settlement is independent of any service award and not conditioned on the Court awarding any

5  particular amount or any award at all.  Thus, Plaintiffs' adequacy as class representatives is

6  unaffected by an appropriate service award that recognizes their efforts and significant

7  contributions to the case.  Moreover, the Settlement Class Members here are entitled to

8  substantial monetary relief as set forth above.  Service awards of $3,000 to Plaintiffs are

9  reasonable under the circumstances and well in line with awards approved by federal courts.

10  *See, e.g., Pelletz*, 592 F. Supp. 2d at 1329-30 & n.9 (approving $7,500 service awards and

11  collecting decisions approving awards ranging from $5,000 to $40,000).

12       5.    <u>The Requested Attorneys' Fees and Costs Are Fair and Reasonable</u>

13       The Settlement Agreement provides that Sakuma will pay $344,000 to Class Counsel

14  for attorneys' fees and costs pursuant to the Washington fee-shifting statutes applicable to

15  Plaintiffs' claims, RCW 49.46.090, RCW 49.48.030, and RCW 49.52.070.  This includes the

16  costs Class Counsel reasonably anticipate incurring to provide notice of the settlement and to

17  administer claims.  Of the $344,000, Plaintiffs seek $9,141.95 in litigation expenses incurred in

18  this case to date, $7,762.35 in projected notice and claims administration costs, and

19  $327,095.70 in attorneys' fees.

20       The wage statutes under which Plaintiffs pursued claims provide for mandatory awards

21  of attorneys' fees and costs to prevailing employees.  *See* RCW 49.48.030 (in "any action" in

22  which employee recovers wages or salary owed, "reasonable attorney's fees, in an amount to be

23  determined by the court, shall be assessed against said employer or former employer"); RCW

24  49.46.090 (employee who recovers for violations of minimum wage law is entitled to "costs

25  and such reasonable attorney's fees as may be allowed by the court"); RCW 49.52.070

26  (employer who willfully withholds wages "shall be liable . . . for twice the amount of wages

unlawfully [withheld] . . . together with costs of suit and a reasonable sum for attorney's fees").

---

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 17
CASE NO. 2:13-cv-01918-MJP

1    Relying on United States Supreme Court precedent, the Ninth Circuit has held "that the

2    parties to a class action may simultaneously negotiate merits relief and an award of attorneys'

3    fees under a fee-shifting statute . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 971−72 (9th Cir.

4    2003) (citing *Evans v. Jeff D.*, 475 U.S. 717, 720 (1986)). "In the course of judicial review, the

5    amount of such attorneys' fees can be approved if they meet the reasonableness standard when

6    measured against statutory fee principles." *Id.* at 972. In other words, the Court assesses "the

7    reasonableness of the fee request under the lodestar calculation method." *Id.* at 966. Plaintiffs'

8    counsel's request for fees is reasonable under lodestar analysis.

9    a.    *Lodestar Analysis Supports Counsel's Fee Request*

10   Under the lodestar method, the district court first calculates the "lodestar" by

11   multiplying the reasonable hours expended by a reasonable hourly rate. *See generally Vizcaino*

12   *v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002); *see also Staton*, 327 F.3d at 965.

13   If circumstances warrant, the court may adjust the lodestar to account for other factors which

14   are not subsumed within it. *Staton*, 327 F.3d at 965 & n.17.

15   Here, a payment of $327,095.70  in attorneys' fees is reasonable in light of Class

16   Counsel's lodestar and, indeed, reflects an amount well under the actual fees Class Counsel

17   have incurred, let alone the actual fees they will incur by the end of this litigation and the notice

18   and claims administration process.[4] Since the commencement of the investigation of this action

19   in July 2013, Plaintiffs' counsel have incurred more than $388,000 in fees and estimate they

20

21   [4] Courts regularly award full attorneys' fees and costs under fee-shifting wage statutes where the underlying wage
     claims and AWPA claims arise from a common core of facts, even though AWPA does not contain its own fee-
22   shifting provision. *See, e.g., De Leon v. Trevino*, 163 F.Supp.2d 682, 685 (S.D. Tex. 2001) ("Plaintiffs' claims
     under the FLSA and the AWPA all arose from the identical nucleus of facts. Accordingly, this Court deems it
23   appropriate that attorneys' fees should include all hours reasonably spent on the litigation as a whole."); *Villalobos
     v. Vasquez-Campbell*, 1991 WL 311902, at *7-8 (W.D. Tex. Nov. 15, 1991) ("The claims under the Agricultural
24   Workers Protection Act, the Fair Labor Standards Act, and breach of contract all arose from the identical nucleus
     of facts. This Court awards Plaintiffs their reasonable attorneys' fees for *all* hours worked on this action.");
25   *Gooden v. Blanding*, 686 F. Supp. 896, 897 (S.D. Fla. 1988) ("While only the FLSA provides for attorneys fees,
     both of these actions arise out of the same core facts. Accordingly, this Court deems it appropriate that attorneys
26   fees should include all hours reasonably spent on the litigation as a whole."). Because the state law wage claims
     and AWPA claims arise from the same core facts, a full attorney fee and cost award is appropriate in this case.
     Moreover, even if time spent solely on AWPA claims was excluded, Plaintiffs' attorneys' fees would still be well
     in excess of the amount they request. Cote Decl. ¶ 18.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 18
CASE NO: 2:13-CV-01918-MJP

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   will incur more than $20,000 in additional fees to obtain final settlement approval.[5]  *See* Cote

2   Decl. ¶¶ 13, 15; Ford Decl. ¶ 16.  Thus, by the end of the litigation, Plaintiffs' counsel estimate

3   they will have incurred more than $400,000 in fees, not including fees incurred in the notice

4   and claims administration process.  *See* Cote Decl. ¶ 15; Ford Decl. ¶¶ 15–16.

5       In all, Plaintiffs' counsel have devoted more than 1,600 hours to the investigation,

6   development, litigation and resolution of this complex case.  *See* Cote Decl. ¶ 13; Ford Decl. ¶

7   14.  This includes time spent investigating the claims of the Class Members, conducting

8   discovery, researching and analyzing legal issues, calculating damages, interviewing witnesses,

9   preparing for mediation, and engaging in settlement negotiations.  After mediation, Plaintiffs'

10  counsel worked extensively with Sakuma's counsel to iron out a written settlement agreement.

11  Cote Decl. ¶ 3.  Plaintiffs' counsel also assisted with drafting the exhibits to the agreement,

12  including the settlement notice and claim forms.  *Id.*  Plaintiffs' counsel then prepared this

13  motion for preliminary approval along with supporting declarations.

14      Throughout this case, Plaintiffs' counsel prosecuted the claims of Plaintiffs and the

15  class efficiently and effectively.  Knowing it was possible they would never recover, counsel

16  had no incentive to act in a manner that was anything but economical.  *See Moreno v. City of*

17  *Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend

18  unnecessary time on contingency cases in the hope of inflating their fees.  The payoff is too

19  uncertain, as to both the result and the amount of the fee.").  That said, counsel took the charge

20  seriously and endeavored to represent the interests of the class to the greatest extent possible.

21      The lodestar calculations of Plaintiffs' counsel are based on reasonable hourly rates.

22  Plaintiffs' counsel set their rates for attorneys and staff members based on a variety of factors,

23  including among others: the experience, skill, and sophistication required for the types of legal

24  services performed; the rates customarily charged in the markets where legal services are

25  performed; and the experience, reputation, and ability of the attorneys and staff members.  Cote

26  Decl. ¶ 14; Ford Decl. ¶ 15.  The rates charged for attorneys and staff members working on this

---

[5] This does not include the attorneys' fees for the notice and claims administration process.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   matter range from $100.00 to $400.00, with the majority of the work performed by the

2   following attorneys: Mr. Cote at an hourly rate of $300.00, Mr. Ford at an hourly rate of $375,

3   Ms. Leyrer at an hourly rate of $275, and Mr. Haynes at an hourly rate of $230.  *See* Cote Decl.

4   ¶ 14; Ford Decl. ¶ 15.  Federal courts have found rates significantly higher than these to be

5   "reasonable for the work performed in each of [Counsel's] respective communities by attorneys

6   of similar skill, experience, and reputation."  *See Pelletz,* 592 F. Supp. 2d at 1326 (approving

7   hourly rates for work performed in Seattle that ranged from $415 to $760); *Clark v. Payless*

8   *Shoesource, Inc.*, 2012 WL 3064288, at *3 (W.D. Wash. July 27, 2012) (approving hourly rates

9   of $600 and $515 for two Seattle attorneys).

10          The fee requested by Plaintiffs' counsel reflects an amount less than the actual fees

11   counsel have incurred to date.  The requested fee award is reasonable given the outstanding

12   result Plaintiffs' counsel have achieved for Class Members, the risks involved in the case, the

13   complexity of the case, and the challenge of investigating a case involving migrant workers

14   who speak indigenous languages.  As noted above, Plaintiffs have negotiated an excellent

15   settlement for Class Members under the circumstances.  Further, while Plaintiffs' counsel were

16   confident in their ability to succeed at trial, success was by no means guaranteed, especially

17   considering Sakuma's substantial opposition.  Because Plaintiffs' counsel agreed to prosecute

18   this case on contingency with no guarantee of ever being paid, they faced substantial risk

19   should they proceed to trial.  In short, Plaintiffs' requested attorneys' fee award is reasonable

20   and appropriate, and should be granted.

21                  b.      *Class Counsel's Out-of-Pocket Expenses Were Reasonably*
                            *Incurred*
22

23          The litigation expenses Class Counsel incurred in this case include the following:  (1)

24   filing fees, (2) deposition expenses, (3) copying and mailing expenses; (4) computer research

     expenses; (5) factual investigation expenses; and (6) travel expenses.  *See* Cote Decl. ¶ 16; Ford
25

26   Decl. ¶ 17.  Since the commencement of the investigation of the case, Plaintiffs' counsel have

     incurred $9,141.95 in litigation expenses and estimate they will incur additional expenses to

---

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 20
CASE NO. 2:13-CV-01918-MJP

1   prosecute the case through final settlement approval.  *See id*.  These out-of-pocket costs were

2   necessary to secure the resolution of this litigation.  *See In re Toys R Us-Delaware, Inc.—Fair*

3   *& Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014)

4   (finding that costs such as filing fees, court reporter deposition fees, travel expenses, postage,

5   telephone and fax costs, computerized legal research fees, and mediation fees reasonable

6   expenses in class action litigation); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d

7   1166, 1177-1178 (S.D. Cal. 2007) (reimbursing reasonable expenses in the amount of

8   $261,971.79); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994) (holding that attorneys may

9   recover reasonable expenses that would typically be billed to paying clients in non-contingency

10  matters).  Thus, Class Counsel's request for reimbursement of expenses is reasonable.  In

11  addition, Class Counsel anticipate incurring $7,762.35 in notice and settlement administration

12  costs.  *See* Cote Decl. ¶ 17; Ford Decl. ¶ 16.

13      Plaintiffs' request for attorneys' fees, litigation expenses, and notice and settlement

14  administration costs are fair, adequate, and reasonable in light of Class Counsel's hard work to

15  bring this case to a successful resolution.

16      6.   The Attorney Fee and Cost Petition and Final Approval Motion Will Be
            Available to Settlement Class Members Before the Objection Deadline.

17

18      Courts must allow class members the opportunity to examine the final motion for

19  attorneys' fees and costs before the deadline for objections to a class section settlement.  *In re*

    *Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).  Class Counsel's
20
    motion for final approval of the settlement, including approval of the payment of attorneys'
21
    fees, litigation expenses, costs of notice and claims administration, and incentive awards will be
22
    available for Settlement Class Members to review by contacting Class Counsel using the
23
    contact information listed on the Class Notice.  Settlement Agreement, Ex. D at 3.
24
        If any Settlement Class Member contacts Class Counsel and requests a copy of the
25
    motion for final approval, Class Counsel will provide a copy.  *Id.*  By September 23, 2014
26
    (three weeks before the objection deadline), Class Counsel intend to file the final approval

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 21
CASE NO. 2:13-cv-01918-MJP

1    motion and make it available to any Settlement Class Member who requests it.  Cote Decl. ¶

2    23.  Settlement Class Members will have a reasonable opportunity to object to the motion.

3    **C.    Provisional Certification of the Class Is Appropriate**

4          For settlement purposes, Plaintiffs respectfully request the Court provisionally certify

5    the class defined in Section II.C.1.  Provisional certification of a class for settlement purposes

6    permits notice of the proposed settlement to inform class members of the existence and terms

7    of the proposed settlement, of their right to be heard on its fairness, of their right to opt out, and

8    of the date, time and place of the formal fairness hearing.  *See* MCL 4th §§ 21.632, 21.633.

9    Sakuma waives any challenges to class action certification for purposes of this settlement.

10         Certification of the Settlement Class for settlement purposes is appropriate under Rule

11   23(b)(3).  The numerosity requirement of Rule 23(a) is satisfied.  Sakuma has confirmed that

12   the class consists of approximately 1,221 current and former migrant and seasonal employees.

13   *See* Settlement Agreement ¶ 7.  Joinder of all such persons is impracticable.  *See* Fed. R. Civ. P.

14   23(a)(1).  The commonality requirement is satisfied because there are many questions of law

15   and fact common to the class that center on Sakuma's employment practices.  *See* Fed. R. Civ.

16   P. 23(a)(2); Dkt. No. 19, ¶ 4.3.  The typicality requirement is satisfied because Plaintiffs'

17   claims arise from the same course of conduct that gives rise to the claims of other Class

18   Members.  *See* Fed. R. Civ. P. 23(a)(3); Dkt. No. 19, ¶ 4.4.  The adequacy of representation

19   requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic

20   to, the interests of the class.  *See* Fed. R. Civ. P. 23(a)(4); Dkt. No. 19, ¶ 4.5.  The

21   predominance requirement is satisfied because common questions present a significant aspect

22   of the case and can be resolved for all Class Members in a single adjudication.  *See* Fed. R. Civ.

23   P. 23(b)(3); Dkt. No. 19, ¶ 4.6; *see also Local Joint Exec. Bd. of Culinary/Bartender Trust*

24   *Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001).

25         Because the claims are being certified for purposes of settlement, there are no issues

26   with manageability (*see Newberg* § 11.28), and resolution of hundreds of claims in one action

     is superior to individual lawsuits and promotes consistency and efficiency of adjudication.  *See*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 22
CASE NO. 2:13-cv-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   Fed. R. Civ. P. 23(b)(3).  Thus, certification of the class for settlement purposes is appropriate.

2   **D.      The Proposed Notice Program Is Constitutionally Sound**

3           To protect Class Member rights, the Court must provide the best notice practicable

4   regarding the proposed settlement.  Fed. R. Civ. P. 23(c)(2)(B).[6]  The best practicable notice is

5   that which is "reasonably calculated, under all the circumstances, to apprise interested parties

6   of the pendency of the action and afford them an opportunity to present their objections."

7   *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

8           Class Members have been reasonably identified through Sakuma's own records, which

9   contain information on all seasonal and migrant fruit harvest workers within the statutory time

10  period, including each person's last known phone number and address.  Cote Decl. ¶ 19.  The

11  parties propose sending notice in the form attached as Exhibit D to the Settlement Agreement

12  directly via First Class mail to all Settlement Class Members.  Due to the fact that Settlement

13  Class Members are migrant farmworkers who may not have permanent addresses to receive

14  notice, the notice plan will begin after workers arrive in the Skagit Valley to perform work in

15  the summer of 2014 and after Sakuma provides an updated class contact list with any

16  temporary Sakuma labor camp addresses and any other updated addresses.  Class Counsel will

17  then mail a Spanish and English Notice Packet to each Settlement Class Member's updated

18  address and will provide a Notice Packet to any Settlement Class Member who requests one.

19          To ensure that the maximum number of Settlement Class Members have the opportunity

20  to submit claims, Class Counsel will coordinate with community organizations to perform

21  outreach with the workers and distribute Notice Packets.  Class Counsel will hold a meeting or

22  meetings during the 2014 summer harvest to explain the settlement and provide and collect

23  Claim Forms.  Finally, Class Counsel will create telephone message lines to provide oral

24  translations of the Class Notice into indigenous Mexican languages that many workers speak.

25

26  ---

[6] *See also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best notice practicable" under the circumstances with description of the litigation and explanation of opt-out rights satisfies due process); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (holding "[w]e do not believe that *Shutts* changes the traditional standard for class notice from 'best practicable' to 'actually received' notice").

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 23
CASE NO. 2:13-cv-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    This comprehensive approach will ensure direct notice reaches as many workers as possible.

2         The language of the proposed notice and accompanying claim and exclusion forms is

3    plain and easily understood, providing neutral and objective information about the nature of the

4    settlement.  It will be sent to each Settlement Class Member in Spanish and English, and the

5    oral translations into indigenous languages will also be available by phone.  The notice and

6    claim form include the definition of the Settlement Class, a statement of each Settlement Class

7    Member's rights (including the right to opt-out or object), detailed explanations of how to

8    submit a claim and share in the settlement funds, a statement of the consequences of remaining

9    in the settlement class, an explanation of how Class Members can exclude themselves from the

10   Settlement, and methods for contacting Class Counsel to obtain more information.  *See*

11   Settlement Agreement, Ex. D.  Plaintiffs submit the notice program outlined in the Settlement

12   Agreement is the best practicable notice under the circumstances of this case.

13                                   **IV.  CONCLUSION**

14        Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the

15   settlement, including the fees and costs payments to Class Counsel; (2) provisionally certify the

16   proposed settlement class; (3) appoint TMDW and CLS as Class Counsel; (4) appoint Ana

17   Lopez Demetrio and Francisco Eugenio Paz as class representatives; (5) approve the proposed

18   notice plan; (6) appoint TMDW and CLS as Settlement Administrators; and (7) schedule the

19   final fairness hearing at the Court's convenience but no earlier than November 3, 2014.

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 24
CASE NO. 2:13-cv-01918-MJP

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

RESPECTFULLY SUBMITTED AND DATED this 11th day of June, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC


By:  /s/ Marc C. Cote, WSBA #39824
Toby J. Marshall, WSBA #32726
Email:  tmarshall@tmdwlaw.com
Marc C. Cote, WSBA #39824
Email:  mcote@tmdwlaw.com
Beau C. Haynes, WSBA #44240
Email:  bhaynes@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington  98103
Telephone:  (206) 816-6603
Facsimile: (206) 350-3528

COLUMBIA LEGAL SERVICES

By:  /s/ Daniel G. Ford, WSBA #10903
Daniel G. Ford, WSBA #10903
Email:  dan.ford@columbialegal.org
Sarah Leyrer, WSBA #38311
Email:  sarah.leyrer@columbialegal.org
101 Yesler Way, Suite 300
Seattle, Washington  98104
Telephone:  (206) 464-5936
Facsimile: (206) 382-3386

*Attorneys for Plaintiffs and Proposed Class*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 25
CASE NO. 2:13-cv-01918-MJP

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

## CERTIFICATE OF SERVICE

2

3          I, Marc C. Cote, hereby certify that on June 11, 2014, I electronically filed the foregoing

4     with the Clerk of the Court using the CM/ECF system which will send notification of such

5     filing to the following:

6          Adam S. Belzberg
           Email:  abelzberg@grahamdunn.com
7          GRAHAM & DUNN
           Pier 70
8          2801 Alaskan Way, Suite 300
           Seattle, Washington  98121-1128
9          Telephone:  (206) 340-9654
           Facsimile:  (206) 340-9599
10

11         *Attorney for Defendant*

12         DATED this 11th day of June, 2014.

13                                        TERRELL MARSHALL DAUDT & WILLIE PLLC

14

15                                        By:  /s/ Marc C. Cote, WSBA #39824
                                              Marc C. Cote, WSBA #39824
16                                            Email:  mcote@tmdwlaw.com
                                              936 North 34th Street, Suite 300
17                                            Seattle, Washington  98103
                                              Telephone:  (206) 816-6603
18                                            Facsimile: (206) 350-3528

19                                        *Attorneys for Plaintiffs and Proposed Class*

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT  - 26
CASE NO. 2:13-CV-01918-MJP

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com