HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ANA LOPEZ DEMETRIO and FRANCISCO
EUGENIO PAZ, individually and on behalf of
all others similarly situated,

                Plaintiffs,

    v.

SAKUMA BROTHERS FARMS, INC.,

           Defendant.

NO. 2:13-cv-01918-MJP

**MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

**NOTE ON MOTION CALENDAR:
November 14, 2014 at 10 a.m.**

**Set for Oral Argument**

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 2:10-CV-00774-RAJ

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

**TABLE OF CONTENTS**

Page No.

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT AND AUTHORITY .......................................................................1

      A.    The Settlement Satisfies the Criteria for Final Approval ......................................1

            1.    The Strength of Plaintiffs' Case .................................................................1

            2.    The Risk, Expense, Complexity, and Likely Duration of
                  Further Litigation.......................................................................................3

            3.    The Risk of Maintaining Class Action Status ...........................................5

            4.    The Amount Offered in Settlement ...........................................................5

            5.    The Extent of Discovery Completed and the Stage of the
                  Proceedings................................................................................................8

            6.    The Experience and Views of Counsel ......................................................9

            7.    The Presence of a Governmental Participant ............................................9

            8.    The Reaction of Settlement Class Members ...........................................10

      B.    The Settlement Is the Result of Informed, Arm's Length Negotiations..............11

      C.    The Court-Ordered Notice Program Is Constitutionally Sound and
            Will Be Fully Implemented ................................................................................12

      D.    The Payment of Attorneys' Fees and Costs and Notice and Claims
            Administration Costs Is Fair and Reasonable .....................................................14

            1.    Class Counsel's Lodestar Is Reasonable .................................................16

            2.    Class Counsel's Litigation Expenses Are Reasonable ............................19

            3.    Class Counsel's Notice and Claims Administration Costs Are
                  Reasonable................................................................................................19

      E.    The Class Representative Service Awards Are Fair and Reasonable .................20

III.  CONCLUSION ...................................................................................................21

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Abdullah v. U.S. Sec. Assoc., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ........................................................................................5

*Blum v. Stenson*,
    465 U.S. 886 (1984) ......................................................................................................17

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979)..............................................................................12

*Clark v. Payless Shoesource, Inc.*,
    No. C09–0915–JCC, 2012 WL 3064288 (W.D. Wash. July 27, 2012) ..........................18

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ...........................................................................................2

*De Leon v. Trevino*,
    163 F.Supp.2d 682 (S.D. Tex. 2001) .............................................................................15

*Evans v. Jeff D.*,
    475 U.S. 717 (1986) ......................................................................................................14

*Garner v. State Farm Auto Ins. Co.*,
    No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. April 22, 2010) ...............9

*Gooden v. Blanding*,
    686 F. Supp. 896 (S.D. Fla. 1988)...............................................................................15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) .........................................................................................1

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir.1994) .............................................................................................19

*Hughes v. Microsoft Corp.*,
    No. C98-1646C, C93-0178C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001)..........11

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .........................................................................................15

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ......................................................19

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................................7

*In re Omnivision Tech., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007)................................................7, 12

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
    227 F.R.D. 553 (W.D. Wash. 2004) ............................................................12

*In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ................................................................19

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ......................................................................17

*Jones v. Agilysys, Inc.*,
    No. C 12-03516 SBA, 2014 WL 2090034 (N.D. Cal. May 19, 2014) ............20

*Lane v. Facebook*,
    696 F.3d 811 (9th Cir. 2012) ........................................................................7

*Laguna v. Coverall N. Am.*,
    753 F.3d 918 (9th Cir. 2014) .............................................................. *passim*

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ....................................................................17

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................3

*Pelletz v. Weyerhaeuser Co.*,
    255 F.R.D. 537 (W.D. Wash. 2009) ..................................................... *passim*

*Radcliffe v. Experian Info. Solutions*,
    715 F.3d 1157 (9th Cir. 2013) ....................................................................20

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..........................................................6, 11, 20

*Schwarz v. Sec'y of Health & Human Servs.*,
    73 F.3d 895 (9th Cir.1995) .........................................................................17

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT  - iii
CASE NO. 2:10-CV-00774-RAJ

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................................................11, 14, 16, 20

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ..........................................................................................2

*Trevino v. Gates*,
99 F.3d 911 (9th Cir. 1996) ........................................................................................17

*Villalobos v. Vasquez-Campbell*,
1991 WL 311902 (W.D. Tex. Nov. 15, 1991) .............................................................15

*Welch v. Metro. Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007) ......................................................................................18

**STATE CASES**

*Salas v. Hi-Tech Erectors*,
168 Wn.2d 664, 230 P.3d 583 (2010) ...........................................................................3

**FEDERAL STATUTES**

28 U.S.C. § 1715 .............................................................................................9, 10, 22

**STATE STATUTES**

RCW 49.46.090 ..............................................................................................................15

RCW 49.48.030 ..............................................................................................................15

RCW 49.52.070 ..............................................................................................................15

RCW 63.29 .......................................................................................................................7

**OTHER AUTHORITIES**

*Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61 (2010) ........................................1

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT  - iv
CASE NO. 2:10-CV-00774-RAJ

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdlaw.com

1

# I.  INTRODUCTION

2

Plaintiffs Ana Lopez Demetrio and Francisco Eugenio Paz respectfully submit this

3

motion for final approval of the class action settlement they reached with Defendant Sakuma

4

Brothers Farms, Inc. ("Sakuma").[1]  For the reasons set forth in this motion and in the papers

5

previously submitted in support of preliminary approval (Dkts. 26-29), the settlement is fair,

6

adequate, and reasonable, and in the best interests of the Settlement Class.  To Plaintiffs'

7

knowledge, it is the largest farm worker wage and hour class action settlement on record in

8

Washington.  Accordingly, Plaintiffs request that the Court grant final approval of the

9

settlement by: (1) approving the Settlement Agreement as fair, adequate, and reasonable for the

10

Settlement Class; (2) determining that adequate notice was provided to the Settlement Class;

11

(3) approving the awards of attorneys' fees, litigation expenses, and notice and claims

12

administration costs for Class Counsel; and (4) approving the service awards for Plaintiffs.

13

# II.  ARGUMENT AND AUTHORITY

14

When considering a motion for final approval of a class action settlement under Rule

15

23, a court must determine whether the settlement is "fundamentally fair."  *Laguna v. Coverall*

16

*N. Am., Inc.*, 753 F.3d 918, 923 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d

17

1011, 1026 (9th Cir. 1988)).  A settlement merits final approval, when "the interests of the class

18

are better served by the settlement than by further litigation."  *Manual for Complex Litigation*

19

(Fourth) ("MCL 4th") § 21.61, at 424 (2014).  Although Rule 23 imposes procedural

20

requirements on the approval of a class settlement, a district court's only role in reviewing the

21

substance of a settlement is to ensure that it is "fair, adequate and free from collusion."

22

*Hanlon*, 150 F.3d at 1027.  Where Plaintiffs face "real dangers in proceeding on their case,"

23

where "the class gain[s] significant benefits from the settlement," and where "Plaintiffs'

24

25

26

---

[1] Capitalized terms in this brief have the same meaning as in the Stipulation of Settlement and Release Between Plaintiffs and Defendant, Dkt. 27.

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 1
CASE NO. 2:13-CV-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

lawyers receive[] fees that are overall reasonable," a class action settlement agreement is "fair, reasonable, and adequate." *Laguna*, 753 F.3d at 925.

**A.      The Settlement Satisfies the Criteria for Final Approval**

In deciding whether to grant final approval to a class action settlement, courts consider several factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement.

*Laguna*, 753 F.3d at 923 (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).  Applied to this case, the relevant criteria support final approval of the settlement.

1.      <u>The Strength of Plaintiffs' Case</u>

Although Plaintiffs have thoroughly investigated the factual and legal bases for their claims and have developed substantial evidence supporting their allegations, there were significant risks in continuing the litigation had settlement not occurred.

Plaintiffs alleged that Sakuma engaged in a systematic course of unlawful conduct with respect to migrant and seasonal employees who performed piece-rate fruit harvest work for the company.  Plaintiffs alleged the violations took five primary forms: (1) Sakuma knowingly failed to pay for all hours worked before and after picking fruit; (2) Sakuma knowingly failed to pay the Washington minimum wage; (3) Sakuma knowingly failed to provide rest periods on the employer's time; (4) Sakuma knowingly failed to provide and keep accurate statements of hours worked; and (5) Sakuma knowingly failed to comply with an agreed-upon working arrangement during the 2013 blueberry harvest.  Plaintiffs alleged Sakuma's conduct violated Washington wage and hour laws and the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA").

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 2
CASE NO. 2:13-CV-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    Sakuma steadfastly denied that it failed to pay migrant and seasonal workers for all

2  hours worked, failed to record all hours worked, and failed to provide rest breaks.  Sakuma also

3  forcefully argued that even if Plaintiffs were successful in proving their claims, any damages

4  award would be minimal due to the lack of records of off-the-clock hours worked and missed

5  rest breaks.  If Sakuma was able to convince a jury that Plaintiffs' allegations were overstated

6  or unfounded, Sakuma could effectively reduce the recoverable damages or eliminate them

7  altogether.  In addition, Sakuma argued that any discretionary statutory damages awards under

8  AWPA would be minimal for alleged violations of the recordkeeping and pay statement

9  requirements, and that the Court would not award statutory damages for the wage claims where

10  actual damages compensated the workers for their actual wage loss.

11    Under the settlement, Settlement Class members avoid all of those risks and obstacles to

12  recovery and receive substantial benefits in a timely fashion.

13    2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

14    Another factor in assessing the fairness of the proposed settlement is the complexity,

15  expense, and likely duration of this lawsuit had settlement not been achieved.  *Officers for*

16  *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Throughout the negotiation

17  process, Sakuma vigorously defended its position and expressed every intention of continuing a

18  spirited defense, absent a settlement, through class certification and trial.  Class Counsel have

19  significant experience in wage and hour class action litigation and know that any case involving

20  a class of workers can, and often does, lead to costly litigation that goes on for years.

21    Moreover, there is a substantial risk of losing inherent in any jury trial, particularly one

22  involving immigrant farm workers who do not speak or understand English.  *See Salas v. Hi-*

23  *Tech Erectors*, 168 Wn.2d 664, 672, 230 P.3d 583 (2010) ("Issues involving immigration can

24  inspire passionate responses that carry a significant danger of interfering with the fact finder's

25  duty to engage in reasoned deliberation.").  Considering the migrant nature of the class and

26  class member fears of retaliation and immigration consequences, Plaintiffs would have faced

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 3
CASE NO. 2:13-CV-01918-MJP

1   challenges securing witnesses to testify about Sakuma's practices at trial.   Even if Plaintiffs

2   prevailed at trial, Sakuma could appeal, threatening a reversal of any favorable outcome and

3   causing significant delays in obtaining any relief for Settlement Class members.

4        Entering into mediation, Plaintiffs and their counsel were confident in the strength of

5   their case, but also pragmatic in their awareness of the risks inherent to litigation and the

6   various defenses available to Sakuma.  The reality is that this Court could have refused to

7   certify a class or could have certified a class only on limited claims.  Even if a class was

8   certified before settlement, it is possible that members could have ended up recovering only a

9   fraction of the Settlement Agreement benefits, facing a bankrupt defendant due to mounting

10   legal costs, or losing the case at or before trial.  These facts were significant enough to

11   convince Plaintiffs and their counsel that the benefits of the Settlement Agreement reached

12   with Sakuma outweigh the gamble of continued litigation.

13        Sakuma's financial situation also presented a significant risk that Plaintiffs and the class

14   would be unable to collect all or a significant portion of any judgment entered against Sakuma.

15   *See Laguna*, 753 F.3d at 923 (citing the defendant's poor financial health and the increased

16   "chance that Plaintiffs would be left with nothing if they continued to litigate their claims" in

17   affirming district court's approval of class action settlement).  Plaintiffs' analysis of available

18   financial information revealed that Sakuma's ability to pay a judgment beyond the amount

19   recovered in this settlement is highly uncertain.  Insurance coverage was not available to satisfy

20   Plaintiffs' claims, and Sakuma indicated that due to financial issues, it could not satisfy a large

21   class-wide judgment or the continuing accrual of attorneys' fees.  Dkt. 28, ¶ 21.  Due to its

22   inability to make a lump sum settlement payment, Sakuma had to agree to installment

23   payments over a one-year period.  *See* Dkt. 27, ¶ 13(d).

24        In light of these hurdles, it is unlikely that Plaintiffs and Settlement Class Members

25   could recover the maximum potential damages for their claims after a trial.

26

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 4
CASE NO. 2:13-CV-01918-MJP

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

3.    The Risk of Maintaining Class Action Status

This Court has held that for purposes of settlement this case satisfies the requirements of Rule 23.  *See* Preliminary Approval Order (Dkt. 31) at 2.  The Court's ruling finds ample support in both the facts and the law.  The legal issues that arose from Sakuma's common practices with regard to non-payment for pre-shift and post-shift work, failure to provide rest breaks, unlawful time rounding, and pay statement and recordkeeping violations are uniform for all class members and could be adjudicated on a class-wide basis.  *See Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (finding predominance satisfied where the proposed class is "sufficiently cohesive to warrant adjudication by representation").

Although Plaintiffs are confident class certification could be maintained through trial, Sakuma disagrees.  Sakuma has strenuously denied that class certification is appropriate.  If Sakuma was able to present convincing facts to support its position, the Court could have refused to certify the class, leaving no remedy for hundreds of Sakuma's piece rate workers.

4.    The Amount Offered in Settlement

The settlement requires Sakuma to pay $500,000 to the Settlement Class Members, $3,000 each to named Plaintiffs Ana Lopez Demetrio and Francisco Eugenio Paz for their service in this action, and a total of $344,000 for attorneys' fees and costs and notice and claims administration costs.  Sakuma has also agreed to injunctive relief that ensures employees are paid for all work performed, that employees receive rest breaks required by law, and that employees receive pay statements with accurate statements of hours worked.

The funds distributed to the Settlement Class will be allocated in a manner that is fair and reasonable.  According to updated and corrected data received from Sakuma, the Settlement Class consists of approximately 923 piece-rate workers.[2]  The settlement provides

---

[2] At the preliminary approval stage, the parties believed the class consisted of 1,221 current and former Sakuma employees. Dkt. 26 at 3. Defendant provided an updated and corrected class list on July 3. Cote Decl., ¶ 3. The new list contained 961 entries because several duplicates had been removed. *Id.* In addition, certain names with slightly different spellings had been listed multiple times in the earlier class list (likely due to issues involving class members who were unable to read or write), and those listings were consolidated. *Id.* After receiving this list, Class Counsel performed additional analysis and identified 923 unique Settlement Class Members. Decl. of

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 5
CASE NO. 2:13-CV-01918-MJP

1   that the $500,000 class payment will be distributed proportionately to "Qualified Claimants."

2   Dkt. 27, ¶ 18.  Each Settlement Class Member who returns a valid and timely Claim Form is a

3   Qualified Claimant.  *Id.*  The determination of each Qualified Claimant's proportionate share of

4   the class payment will be based on the following formula: (a) the Class Payment will be

5   divided by the total number of days worked during the Claims Period by all Qualified

6   Claimants, resulting in a gross daily payout amount, and then (b) the gross daily payout amount

7   will be multiplied by each individual Qualified Claimant's total days worked during the Claims

8   Period.  *Id.*

9   As of September 19, 285 Settlement Class Members, over 30% of the class, had filed

10  claims to share in the settlement proceeds.  Declaration of Rachael Pashkowski in Support of

11  Final Approval, ¶ 12.  If no additional claims are received, Plaintiffs estimate that each

12  Qualified Claimant will receive approximately $11.69 per day worked.[3]  *Id.*, ¶ 12.  Plaintiffs

13  reached this estimate by dividing the $500,000 class settlement payment by the total days

14  worked by Qualified Claimants who have submitted claims thus far.  *Id.*  As of September 19,

15  the average number of days worked by each Qualified Claimant is 150 and the average

16  Qualified Claimant payment is $1,753.50.  *Id.*  If no more Settlement Class Members make

17  claims before October 16, the maximum payment will be $4,559.10 for an employee who

18  worked 390 days during the class period.  *Id.*  The minimum payment will be $11.69 for an

19  employee who worked just one day during the class period.  *Id.*

20  Even if every Settlement Class Member submitted a claim, the settlement would

21  immediately provide the right to an award of between 47 and 62 percent of a possible recovery

22  after trial.  *See* Dkt. 26 at 15-16.  These percentages are well in line with settlements approved

23  by other courts.  *See, e.g., Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 964-65 (9th Cir. 2009)

24

25  Rachael Pashkowski,¶ 11.  Thus, the Class is smaller than previously anticipated, which means that each Qualified
    Claimant's award will be larger than previously anticipated.

26  [3] After the October 16 claim deadline, Plaintiffs will file a supplemental brief identifying the total number of
    claims made.

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 6
CASE NO. 2:13-CV-01918-MJP

1   (approving settlement amounting to 30 percent of damages estimated by the class expert; court

2   noted that if the plaintiffs were entitled to treble damages, the settlement would be

3   approximately 10 percent of the estimated damages); *In re Mego Fin. Corp. Sec. Litig.,* 213

4   F.3d 454, 459 (9th Cir. 2000) (approving a settlement estimated to be worth between 1/6 to 1/2

5   the plaintiffs' estimated loss); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D.

6   Cal. 2008) (approving settlement amounting to 6 percent of estimated potential damages).

7          No settlement funds will revert to Sakuma under any circumstances.  After proportional

8   distribution of the settlement payments to Qualified Claimants, a *cy pres* fund will be created

9   for non-wage funds that have been disbursed but remain unclaimed after a period of 120 days.

10  Dkt. 27, ¶ 18(c)(2).  Any *cy pres* funds will be disbursed to the Northwest Justice Project

11  ("NJP").  *Id.*  Class Counsel will request that any such funds be earmarked by NJP for

12  assistance to agricultural workers.[4]  The work of NJP benefits people who, like Settlement

13  Class members, may require legal assistance regarding unlawful wage practices, so the

14  organization's work serves "the objectives of the underlying statutes[] and the interests of the

15  silent class members . . . ." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819-20 (9th Cir. 2012)

16  (internal quotation omitted).  If any Qualified Claimants fail to cash wage award checks within

17  one year of distribution, Sakuma will report and deliver such funds to the state Department of

18  Revenue pursuant to RCW 63.29.

19         In exchange for these benefits, Settlement Class Members agree to release Sakuma from

20  the claims asserted in the lawsuit.  The Settlement Agreement's release is narrowly-tailored and

21  fundamentally fair.  *See* Dkt. 27, ¶¶ 11, 19.  Settlement Class Members do not agree to release

22  Sakuma from liability for claims not alleged in the lawsuit and do not agree to release Sakuma

23  from liability (including a declaratory judgment) for Sakuma's failure to separately pay piece-

24  rate workers for rest breaks (or for missed rest breaks) after December 31, 2013.  *Id.*

25  _____

26  [4] NJP provides civil legal assistance and representation to low-income people in cases affecting basic human needs, including a focus on "employment issues primarily for agricultural workers related to lost wages." http://nwjustice.org/summary-priorities.

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 7
CASE NO. 2:13-CV-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.350.3528
www.tmdwlaw.com

5.      The Extent of Discovery Completed and the Stage of the Proceedings

Final approval is favored because substantial investigation and discovery were completed prior to the settlement.  Courts consider the extent of discovery completed and the stage of the proceedings in determining whether a class action settlement is fair, adequate and reasonable.  Before filing this lawsuit, Plaintiffs' counsel spent three months investigating the factual bases of the workers' claims, interviewing workers, analyzing pay statements and other documents, researching legal issues, and preparing the initial complaint.  Dkt. 28, ¶ 4.  This investigation included multiple meetings with dozens of workers.  *Id*., ¶ 5; Dkt. 29, ¶ 10.

After the complaint was filed, Plaintiffs continued to investigate the facts and law.  The parties conducted extensive discovery over several months, including the production of thousands of pages of documents and data, the depositions of both named Plaintiffs and three Sakuma representatives, and an on-site inspection of Sakuma's property.  *See* Dkt. 28, ¶¶ 4-5.  Plaintiffs pursued lengthy discovery calls to obtain broad discovery, which resulted in the production of many additional documents and data that had not previously been produced.  *Id*., ¶ 4.  In addition, Class Counsel spent a considerable amount of time interviewing Class Members and potential witnesses—most in Spanish or with the assistance of Triqui and Mixteco interpreters.  *Id*., ¶ 5; Dkt. 29, ¶¶ 9-10.  Class Counsel estimate they interviewed more than 200 individuals who worked for Sakuma.[5]  Dkt. 28, ¶ 5; Dkt. 29, ¶ 10.  These interviews proved very helpful in allowing counsel to assess the strengths and weaknesses of Plaintiffs' claims and in preparing the case for mediation and settlement.  Dkt. 28, ¶ 5.

The settlement is the result of a thorough investigation, formal and informal discovery, and an evaluation of Plaintiffs' legal claims.

---

[5] This number includes only pre-settlement class member interviews, so it does not include the hundreds of contacts Class Counsel have had with Settlement Class Members regarding the settlement.  Pashkowski Decl., ¶¶ 5, 8–9.

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 8
CASE NO. 2:13-CV-01918-MJP

6.      The Experience and Views of Counsel

Where Class Counsel are qualified and well informed, their opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight. *See Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 543 (W.D. Wash. 2009). Here, in addition to their expertise in class actions, Class Counsel have been involved in some of the most significant farm worker cases in Washington. Declaration of Sarah Leyrer in Support of Motion for Final Approval, ¶ 7. Based on their research and review of past cases, this settlement appears to be the largest farm worker class action settlement in Washington history. *Id.* Class Counsel believe the settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class as a whole. *See* Dkt. 28, ¶ 7; Dkt. 29, ¶ 13.

7.      The Presence of a Governmental Participant

No governmental entity is a party to this action. The Settlement Agreement required Sakuma to provide relevant federal and state officials notice of the settlement within ten days of Plaintiffs' filing the preliminary approval motion. Dkt. 27, ¶ 22; *see also* 28 U.S.C. § 1715(b). Sakuma did not comply with this provision of the Settlement Agreement based on its belief that the Class Action Fairness Act ("CAFA") notice requirement did not apply in this case. Plaintiffs just learned this month that Sakuma had not submitted the notices required by 28 U.S.C. § 1715(b) and the Settlement Agreement. Declaration of Marc C. Cote in Support of Motion for Final Approval ("Cote Decl."), ¶ 4. Thus, Plaintiffs requested that Sakuma immediately provide such notices. *Id.* On September 17, 2014 and September 22, 2014, Sakuma sent CAFA notices to the appropriate state and federal officials. *Id.*

"Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to class action settlement, CAFA presumes that, once put on notice, either state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010).

"Under Section 1715(d), an order granting final approval of a settlement agreement may

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   not take place earlier than ninety days after the appropriate federal and state officials have been

2   served with notice." *In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 249, 258 n.12

3   (E.D. Pa. 2012).  As in *In re Processed Egg Products*, Plaintiffs believe this Court should

4   proceed with the final approval hearing "as scheduled and to hold its decision on the Plaintiffs'

5   motion for final approval in abeyance until the ninety-day expiration date [has] passed without

6   any objections or requests for hearings being received from any relevant authority pursuant to

7   28 U.S.C. § 1715(d)." *Id.* at 258 n.12.  The ninety-day expiration date will pass on December

8   21, 2014.  Holding a decision on final approval in abeyance until December 21 will result in the

9   least prejudice to class members, who should not be punished for Sakuma's failure to comply

10  with 28 U.S.C. § 1715(d) and the Settlement Agreement.[6]

11          8.      The Reaction of Settlement Class Members

12          A positive response to a settlement by the class—as evidenced by the fact that there

13  have been only two opt-outs and no objections—further supports final approval.[7]  *See Pelletz*,

14  255 F.R.D. at 543.  As of September 19, 285 Settlement Class Members have submitted valid

15  claims.  Pashkowski Decl., ¶ 12.  The deadline to submit claims, opt out, or object to the

16  settlement is October 16, 2014.[8]  Thus, Plaintiffs will provide further analysis of this factor

17  when they file response papers regarding any objections to the settlement.  If there are no

18  objections, Class Counsel will, of course, advise the Court.

---

19  [6] In addition, the settlement notice issued to Settlement Class Members informs them that the final fairness hearing
20  will occur on November 14, 2014 at 10:00 a.m., so that hearing should not be changed.

21  [7] Class Counsel received a total of nine exclusion forms.  Pashkowski Decl., ¶ 13.  Of those, three of the
    individuals submitted both exclusion forms and claim forms due to confusion about how to make a claim.  *Id.*
22  Class Counsel followed up with these individuals, and the individuals confirmed they intended to make claims and
    would like to withdraw the exclusion forms.  *Id.*  Four other Settlement Class Members also originally submitted
23  exclusion forms, but Class Counsel followed up with these individuals and learned that they also intended to make
    claims and did not understand that the form they originally submitted would exclude them from the settlement.  *Id.*
    These individuals asked that their exclusion forms be withdrawn, and they submitted claim forms.  *Id.*  Class
24  Counsel attempted to reach the two remaining individuals who submitted exclusion forms to ensure they did not
    intend to make claims, but they were unreachable.  *Id.*  Thus, their exclusion forms will be processed unless they
25  respond that they intend to make claims before October 16.

26  [8] Notice packets were mailed on Friday July 18, 2014.  Nordby Decl., ¶ 4.  Thus, the 90-day deadline is October
    16.  Class Counsel revised the notice, claim forms, and exclusion forms to reflect the October 16 deadline before
    mailing the notice packets.  Nordby Decl., ¶ 4.

---

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

**B.       The Settlement Is the Result of Informed, Arm's-Length Negotiations**

Courts in the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (internal citations omitted). The Ninth Circuit will not overturn approval of a compromised settlement "unless the terms of the agreement contain convincing indications that the incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of the negotiations . . . ." *Laguna*, 753 F.3d at 924 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003)). When, as in this case, an attorney fee award is "clearly reasonable" as viewed through the appropriate application of the lodestar method, "the chance of collusion narrows to a slim possibility." *Id.* at 925.

To reach this settlement, Plaintiffs and Sakuma engaged in extensive negotiations, including a fifteen-hour mediation session with Teresa Wakeen, an experienced and respected mediator. Dkt. 28, ¶ 2. After the mediation, the parties continued to negotiate the specific terms of the Settlement Agreement, which was fully and finally executed by May 29, 2014. Dkt. 27 at 22-24.

The Settlement Agreement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this case. Dkt. 28, ¶¶ 2-4, 7-8; Dkt. 29, ¶¶ 10-13. Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of wage and hour class action cases similar to this case as well as the legal issues facing immigrant farm workers. Dkt. 28, ¶¶ 9-12; Dkt. 29, ¶¶ 4-9. In negotiating the Settlement Agreement, counsel had the benefit of years of experience litigating class actions and a familiarity with the facts of this case. *Id.* Such negotiations are prima-facie evidence of a settlement that is fair and reasonable. *See Hughes v. Microsoft Corp.*, No. C98-1646C, C93-0178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    discovery."); *see also Pelletz*, 255 F.R.D. at 542-43 (approving settlement "reached after good

2    faith, arms-length negotiations"); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227

3    F.R.D. 553, 567 (W.D. Wash. 2004) (approving settlement "entered into in good faith,

4    following arms-length and non-collusive negotiations"); *In re Omnivision Tech., Inc.*, 559 F.

5    Supp. 2d at 1043 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979))

6    ("The recommendations of plaintiffs' counsel should be given a presumption of

7    reasonableness.").

8           Here, the settlement terms provide further support that the settlement is a result of

9    informed, arms-length negotiations.  One key negotiated element of the settlement was that no

10   settlement funds, under any circumstances, would revert to Sakuma.  Settlement Class

11   Members, regardless of how many make claims, will share proportionately in the $500,000

12   class payment, based on the number of days they worked at Sakuma during the years at issue.

13          Moreover, the amount of attorneys' fees Sakuma must pay under the settlement is well

14   below the actual fees Class Counsel have incurred.  *See infra* section II.D.  Sakuma has agreed

15   to pay these fees in addition to the settlement awards due to Qualified Claimants.  Thus, this is

16   not a "common fund" payment in which Settlement Class Members pay for attorneys' fees and

17   costs out of their settlement awards.  In addition, the proposed class representative incentive

18   awards are modest and commensurate to the efforts the class representatives have taken on

19   behalf of the Settlement Class.  *See infra* section II.E.

20   **C.     The Court-Ordered Notice Program Is Constitutionally Sound and Is Being Fully
            Implemented**

21
22          This Court has already determined that the proposed notice program in this case meets

     the requirements of due process and applicable law, provides the best notice practicable under
23
     the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto.
24
     Dkt. 31, ¶ 5.  As Settlement Administrators, Class Counsel received Settlement Class member
25
     names, mailing addresses, and telephone numbers and implemented the notice plan.  *See*
26
     Declaration of Eden Nordby ("Nordby Decl."), ¶¶ 3–4.  Notice packets were mailed to

1   Settlement Class Members on July 18, 2014. *Id.*, ¶ 4. Class Counsel also distributed notice

2   packets to Settlement Class Members, explained the terms of the settlement, and assisted

3   Settlement Class members in completing claim forms in a meeting with Settlement Class

4   Members on July 27, 2014. Cote Decl., ¶ 5. Class Counsel received approximately 115 claim

5   forms from Settlement Class Members at that meeting. *Id.*

6           Although 169 of the mailed notice packets were returned as undeliverable, it is likely

7   that many of these Settlement Class Members received notice of the settlement because (1)

8   Class Counsel sent notice packets to every address Class Counsel had on file for each

9   Settlement Class Member, resulting in notice packets being sent to multiple addresses for some

10  Settlement Class Members; (2) Class Counsel had a meeting regarding the settlement with 115

11  Settlement Class Members and assisted these Settlement Class Members with claim forms; (3)

12  Class Counsel went door-to-door at Sakuma's labor camp to advise residents of the settlement,

13  answer questions, offer help with the forms, and distribute cards that included the settlement

14  information line telephone number; and (4) Class Counsel mailed notice packets to any

15  Settlement Class Member who called Class Counsel to request one. Nordby Decl., ¶¶ 4–6;

16  Cote Decl., ¶ 5; Pashkowski Decl., ¶ 6–7. Moreover, a copy of this motion for final approval,

17  including the fee request, is available for any Settlement Class Member who requests it.[9] Cote

18  Decl., ¶ 6; *see also* Dkt. 27 at 37.

19          In addition to fully implementing the Court-ordered notice plan, Class Counsel has

20  made additional efforts to reach Settlement Class Members who reside in California. First,

21  Class Counsel created radio announcements about the settlement to be broadcast on Spanish-

22  language radio stations that reach areas of California where potential class members are

23  concentrated. Pashkowski Decl., ¶ 10. Second, Class Counsel is working with community

24

25  ---
    [9] The Notice of Class Action Settlement provides, "If you contact Class Counsel at one of the above addresses or
26  phone numbers and request a copy of the motion for final approval, Class Counsel will send you a copy by mail at
    the address you give them." Dkt. 27 at 37. In this case, this approach is preferable to a settlement website because
    most Settlement Class Members do not use the internet. *See generally* Dkt. 29, ¶¶ 8-9 (discussing migrant and
    indigenous background of class members, most of whom have limited language skills).

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 13
CASE NO. 2:13-CV-01918-MJP

1    organizations to post notices of the settlement in locations frequented by farm workers in and

2    around Madera, California and Santa Maria, California.  *Id.*  Class Counsel targeted Madera

3    and Santa Maria based on the number of unreturned claim forms for Settlement Class Members

4    who reside in those areas.  *Id.*

5          After the claim, exclusion, and objection deadline on October 16, 2014 and before the

6    final approval hearing, Class Counsel will supplement this submission with information (1)

7    confirming that the Class Counsel has fully implemented the Notice Plan, (2) describing the

8    number of exclusions and objections to the settlement, and (3) providing the total number of

9    claims submitted.

10   **D.     The Payment of Attorneys' Fees and Costs and Notice and Claims Administration
             Costs Is Fair and Reasonable**

11         "Attorneys' fees provisions included in proposed class action settlement agreements

12   are, like every other aspect of such agreements, subject to the determination of whether the

13   settlement is 'fundamentally fair, adequate, and reasonable.'"  *Staton*, 327 F.3d at 963 (quoting

14   Fed. R. Civ. P. 23(e)).  However, the Ninth Circuit has recognized that "in the settlement

15   context fees are a subject of compromise."  *Laguna*, 753 F.3d at 922 (citing *Staton*, 327 F.3d at

16   966).  "[S]ince the proper amount of fees is often open to dispute and the parties are

17   compromising precisely to avoid litigation, the [district] court need not inquire into the

18   reasonableness of the fees at even the high end with precisely the same level of scrutiny as

19   when the fee amount is litigated."  *Id.* (quoting *Staton*, 327 F.3d at 966).

20         Moreover, "the parties to a class action may simultaneously negotiate merits relief and

21   an award of attorneys' fees under a fee-shifting statute . . . ."  *Staton*, 327 F.3d at 971 (citing

22   *Evans v. Jeff D.*, 475 U.S. 717, 720 (1986)).  "In the course of judicial review, the amount of

23   such attorneys' fees can be approved if they meet the reasonableness standard when measured

24   against statutory fee principles."  *Id.* at 972.  The lodestar calculation method is appropriate

25   where, as here, a fee-shifting statute authorizes "the award of fees to ensure compensation for

26   counsel undertaking socially beneficial litigation," particularly where a significant part of the

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 14
CASE NO. 2:13-CV-01918-MJP

1  relief requested is injunctive in nature.  *Laguna*, 753 F.3d at 922 (quoting *In re Bluetooth*

2  *Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011)).

3        Washington fee-shifting statutes provide for mandatory awards of attorneys' fees and

4  costs to workers' counsel in cases in which workers recover wages owed, which is undoubtedly

5  "socially eneficial litigation."  *See* RCW 49.48.030 (in "any action" in which employee

6  recovers wages or salary owed, "reasonable attorney's fees, in an amount to be determined by

7  the court, shall be assessed against said employer or former employer"); RCW 49.46.090

8  (employee who recovers for violations of minimum wage law is entitled to "costs and such

9  reasonable attorney's fees as may be allowed by the court"); RCW 49.52.070 (employer who

10  willfully withholds wages "shall be liable . . . for twice the amount of wages unlawfully

11  [withheld] . . . together with costs of suit and a reasonable sum for attorney's fees").[10]

12        Here, Plaintiffs' central claims are under Washington fee-shifting statutes, and Plaintiffs

13  secured valuable injunctive relief in addition to a monetary settlement.  Thus, the lodestar

14  method is appropriate.  Under the lodestar method, Plaintiffs' request for payment of fees is

15  reasonable.  In addition, Plaintiffs' requests for payment of litigation expenses and settlement

16  notice and administration costs are reasonable.

17

18

19

20

21    [10] Moreover, courts regularly award full attorneys' fees and costs under fee-shifting wage statutes where the underlying wage claims and AWPA claims arise from a common core of facts, even though AWPA does not contain its own fee-shifting provision.  *See, e.g.*, *De Leon v. Trevino*, 163 F.Supp.2d 682, 685 (S.D. Tex. 2001)

22  ("Plaintiffs' claims under the FLSA and the AWPA all arose from the identical nucleus of facts.  Accordingly, this Court deems it appropriate that attorneys' fees should include all hours reasonably spent on the litigation as a

23  whole."); *Villalobos v. Vasquez-Campbell*, 1991 WL 311902, at *7-8 (W.D. Tex. Nov. 15, 1991) ("The claims under the Agricultural Workers Protection Act, the Fair Labor Standards Act, and breach of contract all arose from

24  the identical nucleus of facts.  This Court awards Plaintiffs their reasonable attorneys' fees for *all* hours worked on this action."); *Gooden v. Blanding*, 686 F. Supp. 896, 897 (S.D. Fla. 1988) ("While only the FLSA provides for

25  attorneys fees, both of these actions arise out of the same core facts. Accordingly, this Court deems it appropriate that attorneys fees should include all hours reasonably spent on the litigation as a whole.").  Because the state law wage claims and AWPA claims in this case arise from the same core facts, a full attorney fee and cost award is

26  appropriate.  Moreover, even after excluding time spent solely on AWPA claims, Plaintiffs' attorneys' fees are still well in excess of the amount they request.  Cote Decl., ¶¶ 10, 15; Leyrer Decl., ¶ 11.

1        1.    <u>Class Counsel's Lodestar Is Reasonable</u>

2        Under the lodestar method, the district court first calculates the "lodestar" by

3 multiplying the reasonable hours expended by a reasonable hourly rate. *See Staton*, 327 F.3d at

4 965. Through September 19, 2014, Class Counsel devoted over 1508 hours to the

5 investigation, litigation and resolution of this complex case, thereby incurring more than

6 $389,575 in lodestar.[11] Cote Decl., ¶ 10; Leyrer Decl., ¶¶ 5, 9. The declarations of Class

7 Counsel submitted herewith also break down this total by timekeeper and identify a summary

8 of the tasks completed by each timekeeper. Cote Decl., ¶ 14; Leyrer Decl., ¶ 9. This summary

9 is based on the contemporaneous time records for each time keeper. *Id.* Class Counsel's time

10 was spent investigating the claims of Plaintiffs and class members, researching and analyzing

11 legal issues, conducting discovery and depositions, engaging in settlement negotiations and

12 mediation, and preparing briefing in support of preliminary and final approval of the

13 settlement. *Id.* Class Counsel estimate they will spend approximately seventy-five additional

14 hours to see this settlement through to its final resolution, including the work necessary to

15 oversee that the Settlement Agreement is properly carried out and enforced, responding to

16 objections to the settlement (if any), fielding calls from Settlement Class Members, and

17 attending the hearing on final approval. Cote Decl., ¶ 12, Leyrer Decl., ¶ 6.

18        The time Class Counsel devoted to this case is reasonable. Plaintiffs faced a determined

19 and sophisticated adversary represented by experienced counsel. Class Counsel prosecuted the

20 claims at issue efficiently and effectively, making every effort to prevent the duplication of

21 work that might have resulted from having two firms working on this case. Cote Decl., ¶ 16;

22 Leyrer Decl., ¶ 10. Class Counsel also carefully reviewed their contemporaneous time records,

23 deleting duplicative work as well as *de minimis* time billed by attorneys and staff who had little

24 participation in the action. Cote Decl., ¶ 16; Leyrer Decl., ¶ 9. Knowing it was possible they

25  

26 [11] These totals do not include time spent on the settlement notice and claims administration process, time focused on AWPA claims, and time spent litigating the issue of proper payment for pieceworker rest breaks on a going-forward basis. Cote Decl. ¶ 10.

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 16
CASE NO. 2:13-CV-01918-MJP

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ♦ FAX 206.350.3528
www.tmdwlaw.com

1    would never be paid for their work, Class Counsel had no incentive to act in a manner that was

2    anything but economical.  *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir.

3    2008) ("[L]awyers are not likely to spend unnecessary time on contingency cases in the hope of

4    inflating their fees.  The payoff is too uncertain, as to both the result and the amount of the

5    fee.").  That said, Class Counsel took their charge seriously and endeavored to represent the

6    interests of the class members to the greatest extent possible.

7              Class Counsel's hourly rates are also reasonable.[12]  In determining a reasonable rate, the

8    court considers the "experience, skill and reputation of the attorney requesting fees." *Trevino*

9    *v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996) (quoting *Schwarz v. Sec'y of Health & Human*

10   *Servs.,* 73 F.3d 895, 908 (9th Cir.1995)).  The court also considers "the prevailing market rates

11   in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  Class Counsel are

12   experienced members of the bar with extensive experience in the area of class actions and farm

13   worker rights like those at issue here.  Cote Decl., ¶¶ 7–11; Dkt. 29, ¶¶ 2-7.  Class Counsel set

14   their rates for attorneys and staff members based on a variety of factors, including, among

15   others: the experience, skill, and sophistication required for the types of legal services typically

16   performed; the rates customarily charged in the markets where legal services are typically

17   performed; and the experience, reputation, and ability of the attorneys and staff members.  Dkt.

18   28, ¶ 14; Dkt. 29 ¶ 15.  The rates charged for attorneys and staff members working on this

19   matter range from $100.00 to $400.00, with the majority of the work performed by the

20   following attorneys: Mr. Cote at an hourly rate of $300.00, Mr. Ford at an hourly rate of $375,

21   Ms. Leyrer at an hourly rate of $275, and Mr. Haynes at an hourly rate of $230.  *See* Dkt. 28, ¶

22   14; Dkt. 29, ¶ 15.

23             These are the hourly rates Class Counsel charge in similar matters, and federal courts

24   have found rates significantly higher than these to be "reasonable for the work performed in

25   _____

26   [12] Courts apply each biller's current rates for all hours of work performed, regardless of when the work was
     performed, as a means of compensating for the delay in payment.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
     19 F.3d 1291, 1305 (9th Cir. 1994).

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 17
CASE NO: 2:13-CV-01918-MJP

1   each of [Counsel's] respective relevant communities by attorneys of similar skill, experience,

2   and reputation." *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1326-27 (W.D. Wash.

3   2009) (approving hourly rates for work performed in Seattle that ranged from $415 to $760);

4   *see also Clark v. Payless Shoesource, Inc.*, No. C09–0915–JCC, 2012 WL 3064288, at *3

5   (W.D. Wash. July 27, 2012) (approving hourly rates of $600 and $515 for two Seattle

6   attorneys); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (affidavits by

7   plaintiffs' counsel and fee awards in other cases are sufficient evidence of prevailing market

8   rates).  Class Counsel's rates are in the same range that this Court and Washington courts have

9   approved in past cases.  *See, e.g.,* Cote Decl., ¶ 11, Exs. A–D (identifying sample cases in

10  which rates in the requested range have been approved by this Court and King County Superior

11  Court for similar class action matters).  Thus, Class Counsel's hourly rates are reasonable and

12  appropriate for calculating the lodestar.

13         Class Counsel's lodestar is much higher than the requested fee.  Even though Class

14  Counsel's lodestar is $389,575.00 (not including work focused on AWPA claims and not

15  including future work), Plaintiffs seek just $327,095.70 in attorneys' fees.  Thus, the fee

16  request is reasonable under the lodestar method.

17         Not only is the attorney fee request reasonable under the lodestar method, Class

18  Counsel also achieved a very successful result in this "socially beneficial" litigation, resulting

19  in a substantial recovery for Qualified Claimants and significant injunctive relief that ensures

20  Sakuma's piece rate pickers will be properly paid and that they will receive rest and meal

21  breaks.  As noted above, even if all Settlement Class Members submitted valid claims, each

22  would receive a guaranteed award of between 47 and 62 percent of a possible recovery.  *See*

23  Dkt. 26 at 15-16.  Based on the number of Qualified Claimants thus far, each Qualified

24  Claimant will receive an award substantially greater than that.  It is unlikely that each Qualified

25  Claimant could have obtained the result Class Counsel achieved even if Plaintiffs and the class

26  proved all claims at trial.  The excellent result Class Counsel achieved provides further support

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 18
CASE NO. 2:13-CV-01918-MJP

1   for approval of Class Counsel's request for attorneys' fees.  For these reasons, Plaintiffs

2   respectfully request that the Court approve the award of attorneys' fees in the amount of

3   $327,095.70.

4            2.   Class Counsel's Litigation Expenses Are Reasonable

5        The litigation expenses Class Counsel incurred in this case include the following:  (1)

6   filing fees, (2) deposition expenses, (3) copying and mailing expenses; (4) computer research

7   expenses; (5) factual investigation expenses; and (6) travel expenses.  *See* Dkt. 28, ¶ 16; Dkt.

8   29, ¶ 17.  Since the commencement of the investigation of the case, Plaintiffs' counsel have

9   incurred $9,146.80 in litigation expenses.  *See* Cote Decl., ¶¶ 10, 18; Leyrer Decl., ¶ 12.  These

10  out-of-pocket costs were necessary to secure the resolution of this litigation.  *See In re Toys R*

11  *Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438,

12  470 (C.D. Cal. 2014) (finding that costs such as filing fees, court reporter deposition fees, travel

13  expenses, postage, telephone and fax costs, computerized legal research fees, and mediation

14  fees reasonable expenses in class action litigation); *see also Harris v. Marhoefer*, 24 F.3d 16,

15  19 (9th Cir.1994) (holding that attorneys may recover reasonable expenses that would typically

16  be billed to paying clients in non-contingency matters);  *In re Immune Response Sec. Litig.*, 497

17  F. Supp. 2d 1166, 1177-1178 (S.D. Cal. 2007) (reimbursing reasonable expenses in the amount

18  of $261,971.79).  Plaintiffs respectfully request that the Court approve an award of $9,141.95

19  in litigation expenses, which is less than the amount of litigation expenses actually incurred.

20           3.   Class Counsel's Notice and Claims Administration Costs Are Reasonable

21       When they filed their preliminary approval motion, Class Counsel anticipated incurring

22  $7,762.35 in notice and settlement administration costs.  *See* Dkt. 28, ¶ 17; Dkt. 29, ¶ 16.  To

23  date, Class Counsel have incurred $6,777.03 in notice and settlement administration costs and

24  $45,425.00 in notice and settlement administration fees, for a total of $52,202.03.  Cote Decl., ¶

25  20; Leyrer Decl., ¶¶ 13-14.  The notice and claims administration costs include, but are not

26  limited to costs of printing and mailing notice packets, translation costs, and costs of a meeting

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 19
CASE NO. 2:13-CV-01918-MJP

1    with Settlement Class Members in Burlington to notify the Settlement Class Members of the

2    settlement and assist with forms.  *Id.*  These are reasonable costs that were necessary to notify

3    Settlement Class Members of the settlement and administer the settlement process.  Class

4    Counsel also anticipate incurring $500 for additional notice efforts in California and $575.60 in

5    costs to process and mail payments to Qualified Claimants.  Cote Decl., ¶ 20.  Thus, total notice

6    and settlement administration costs (not including attorney and staff time) are expected to total

7    $7,852.63.  Plaintiffs respectfully request that this Court approve an award of $7,762.35 in

8    notice and settlement administration costs, which is less than the anticipated total.[13]

9    **E.      The Class Representative Service Awards Are Fair and Reasonable**

10           Service awards compensating named plaintiffs for work done on behalf of the class

11   attempt to account for financial or reputational risks associated with litigation, and to promote

12   the public policy of encouraging individual plaintiffs to undertake the responsibility of

13   representative lawsuits.  *See Rodriguez*, 563 F.3d at 958-959; *Pelletz*, 592 F. Supp. 2d at 1329

14   ("The trial court has discretion to award incentives to the class representatives.").  In reviewing

15   whether an incentive award is appropriate, the court should take in account "the actions the

16   plaintiff has taken to protect the interests of the class, the degree to which the class has

17   benefitted from those actions, … [and] the amount of time and effort the plaintiff expended in

18   pursuing the litigation."  *Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2014 WL 2090034, at

19   *3 (N.D. Cal. May 19, 2014) (quoting *Staton*, 327 F.3d at 977).  Incentive awards are generally

20   approved so long as the awards are reasonable and do not undermine the adequacy of the class

21   representatives.  *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013)

22   (finding incentive award must not "corrupt the settlement by undermining the adequacy of the

23   class representatives and class counsel").

24

25   ───────────────

26   [13] Class counsel do not seek additional compensation for the time spent by attorneys and staff on notice and
     settlement administration tasks even though they have spent almost two hundred hours on such tasks.  Cote Decl.,
     ¶ 21; Leyrer Decl., ¶ 13.

1    Here, Class Counsel ask the Court to award incentive payments to Plaintiffs in the
2    amount of $3,000 each.  These awards will compensate Plaintiffs for their time and effort in
3    stepping forward to serve as proposed class representatives, assisting in the investigation,
4    keeping abreast of the litigation, being deposed, and meeting and communicating with Class
5    Counsel on an ongoing basis regarding the progress of the litigation, including participating in
6    mediation.  *See* Dkt. 28, ¶ 20.  $3,000 incentive awards to each Plaintiff are reasonable under
7    the circumstances, and are well in line with awards approved by federal courts in Washington
8    and elsewhere.  *See, e.g., Pelletz*, 592 F. Supp. 2d at 1329-30 & n.9 (approving $7,500
9    incentive awards where named plaintiffs assisted Class Counsel, responded to discovery, and
10   reviewed settlement terms, and collecting decisions approving awards ranging from $5,000 to
11   $40,000).

12   Throughout the litigation, Plaintiffs consistently acted in the best interest of the class.
13   The class has benefited greatly from their decision to pursue this action.  As discussed, each
14   Settlement Class Member who files a valid claim will receive a cash award estimated to be over
15   $11 per day worked for Sakuma.  Plaintiffs have devoted substantial time to this litigation over
16   the past year.  They responded to discovery requests, traveled to Seattle for their depositions,
17   met with Class Counsel, actively assisted in Class Counsel's investigation, consulted with Class
18   Counsel by telephone, participated in mediation, and have remained in touch with Class
19   Counsel to monitor the progress of the settlement.  Cote Decl., ¶ 22; Leyrer Decl., ¶¶ 15.

20   In light of Plaintiffs' effort and the risk they undertook to obtain a meaningful result for
21   the class, Class Counsel requests that the Court approve a $3,000 service award for each
22   Plaintiff.

23
24
25
26

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 21
CASE NO. 2:13-CV-01918-MJP

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

**III.  CONCLUSION**

This settlement—the largest farm worker wage and hour class action settlement in Washington history—is fair, adequate, and reasonable, and in the best interests of the Settlement Class.  Thus, Plaintiffs respectfully request final approval of the settlement so that they can proceed to distribute payments to deserving Settlement Class Members.  Plaintiffs request that the Court enter the order granting final approval of the settlement after CAFA's ninety-day expiration date passes on December 21, 2014, pursuant to 28 U.S.C. § 1715(d).

DATED this 23rd day of September, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:  /s/ Marc C. Cote, WSBA #39824
Toby J. Marshall, WSBA #32726
Email:  tmarshall@tmdwlaw.com
Marc C. Cote, WSBA #39824
Email:  mcote@tmdwlaw.com
Beau C. Haynes, WSBA #44240
Email:  bhaynes@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington  98103
Telephone:  (206) 816-6603
Facsimile: (206) 350-3528

COLUMBIA LEGAL SERVICES

By:  /s/ Sarah Leyrer, WSBA #38311
Daniel G. Ford, WSBA #10903
Email:  dan.ford@columbialegal.org
Sarah Leyrer, WSBA #38311
Email:  sarah.leyrer@columbialegal.org
101 Yesler Way, Suite 300
Seattle, Washington  98104
Telephone:  (206) 464-5936
Facsimile: (206) 382-3386

*Attorneys for Plaintiffs and Proposed Class*

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 22
CASE NO. 2:13-CV-01918-MJP

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

CERTIFICATE OF SERVICE

2

3       I, Marc C. Cote, hereby certify that on September 23, 2014, I electronically filed the

4  foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

   such filing to the following:
5

6       Adam S. Belzberg
        Email:  abelzberg@grahamdunn.com
7       GRAHAM & DUNN
        Pier 70
8       2801 Alaskan Way, Suite 300
        Seattle, Washington  98121-1128
9       Telephone:  (206) 340-9654
        Facsimile:  (206) 340-9599
10

11      *Attorney for Defendants*

12      DATED this 23rd day of September, 2014.

13                          TERRELL MARSHALL DAUDT & WILLIE PLLC

14

15                          By:   /s/ Marc C. Cote, WSBA #39824
                               Marc C. Cote, WSBA #39824
16                             Email:  mcote@tmdwlaw.com
                               936 North 34th Street, Suite 300
17                             Seattle, Washington  98103
                               Telephone:  (206) 816-6603
18                             Facsimile: (206) 350-3528

19                          *Attorneys for Plaintiffs and Proposed Class*

20

21

22

23

24

25

26

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 23
CASE NO. 2:13-CV-01918-MJP